No. 25-40367

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

Taylor Rose Rogers,

Plaintiff – Appellee

v.

Ruben Espinoza; Christian Carranza.

Defendants – Appellants

---

On Appeal from

United States District Court for the Southern District of Texas

3:24-CV-38

---

## BRIEF OF APPELLANT CHRISTIAN CARRANZA

---

Submitted by:

William S. Helfand
Norman Ray Giles
Lewis, Brisbois, Bisgaard & Smith, L.L.P.
24 Greenway Plaza
Weslayan Tower, Suite 1400
Houston, Texas 77046

i

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Taylor Rogers | Randall Kallinen of Kallinen Law, P.L.L.C. Houston, TX |

| Appellants: | Counsel for Appellants: |
| --- | --- |
| Christian Carranza | William S. Helfand of Lewis, Brisbois, Bisgaard & Smith, L.L.P. Houston, TX |
| Christian Carranza | Norman Ray Giles of Lewis, Brisbois, Bisgaard & Smith, L.L.P. Houston, TX |
| Ruben Espinoza | Charles Rush of Spalding Nichols Lamp Langlois Houston, TX |
| Ruben Espinoza | Elizabeth Rice of Spalding Nichols Lamp Langlois Houston, TX |

| Other Interested Parties: | Counsel for Interested Parties: |
| --- | --- |
| Texas Municipal League Intergovernmental Risk Pool | William S. Helfand of Lewis, Brisbois, Bisgaard & Smith, L.L.P. Houston, TX |
| Texas Municipal League Intergovernmental Risk Pool | Norman Ray Giles of Lewis, Brisbois, Bisgaard & Smith, L.L.P. Houston, TX |

S/William S. Helfand
Attorney of record for Christian Carranza

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests an opportunity to present an oral argument because this appeal addresses important issues regarding proper application of qualified immunity in cases under Supreme Court and this Court's precedent. Oral argument will aid the Court in addressing these important issues, resolving this appeal, and preserving established doctrine.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iii

TABLE OF CONTENTS.................................................................................... iv

TABLE OF AUTHORITIES ............................................................................. vi

JURISDICTIONAL STATEMENT ......................................................................1

STATEMENT OF THE ISSUE............................................................................2

STATEMENT OF THE CASE..............................................................................2

  A. Summary of Material Evidence ................................................................2

  B. Summary of Procedural History................................................................9

SUMMARY OF THE ARGUMENT ....................................................................11

ARGUMENT ...................................................................................................12

  A. The de novo standard of review applies to analysis of the record. ..................12

  B. Whether the force Officer Carranza used was objectively unreasonable and violated clearly established constitutional law are two separate legal questions for the court to resolve, not questions of fact for a jury.................................13

  C. No fact material to resolution of the objective Fourth Amendment or qualified immunity issues is disputed in the evidence. ................................................19

    1. An objective officer could reasonably believe Officer Carranza's use of leverage for 37 seconds to detain Rogers was reasonable..........................23

    2. An objective officer could reasonably believe Officer Carranza acted with reasonable dispatch to remove Rogers from the grass upon discovering ants were biting Rogers.....................................................................28

    3. An objective officer could reasonably believe holding Rogers' legs in place for eight seconds to maintain control of her was reasonable.......................30

    4. An objective officer could reasonably rely on the other officer who took custody of Rogers to aid her in removing the ants. ...................................31

    5. The case opinions the district court cited provide no basis for denying summary judgment to Officer Carranza. .................................................32

  D. Rogers failed to refute Officer Caranza's qualified immunity. ......................38

    1. The district court erred when it merged application of the Fourth Amendment and qualified immunity. ......................................................38

2.  Rogers failed to establish Officer Carranza violated clearly established constitutional law. ..................................................................40

CONCLUSION ..................................................................48

CERTIFICATE OF SERVICE ..................................................48

CERTIFICATE OF COMPLIANCE ............................................49

CERTIFICATE OF ELECTRONIC COMPLIANCE ..........................49

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Creighton*,
483 U.S. 635 (1987)................................................................................38

*Anderson v. Estrada*,
140 F.4th 634 (5th Cir. 2025) ............................................. 14, 19, 24, 25, 26, 27

*Argueta v. Jaradi*,
86 F.4th 1084 (5th Cir), *cert. denied*, *Argueta v. Jaradi*, 145 S. Ct.
435 (2024)
.......................................................................... 2, 12, 18, 20, 23, 41, 42

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)..............................................................17, 41, 42, 44, 45

*Bailey v. Ramos*,
125 F.4th 667 (5th Cir. 2025) ..............................................2, 26, 34, 35, 37, 39

*Barnes v. Felix*,
__ U.S. __, 145 S. Ct. 1353 (2025)...................................................................14

*Behrens v. Pelletier*,
516 U.S. 299 (1996).........................................................................................19

*Bell v. Wolfish*,
441 U.S. 520 (1979).........................................................................................24

*Benfer v. City of Baytown*,
120 F.4th 1272 (5th Cir. 2024) ............................................................22, 25, 41

*Brinegar v. United States*,
338 U.S. 160 (1949).........................................................................................39

*Brosseau v. Haugen*,
543 U.S. 194 (2004) (*per curiam*) ...............................................................43

*Brothers v. Zoss*,
837 F.3d 513 (5th Cir. 2016) ..........................................................................22

*Brower v. Inyo County*,
489 U.S. 593 (1989)..............................................................................28

*Brown v. Lyford*,
243 F.3d 185 (5th Cir. 2001) ...............................................................41

*Butz v. Economou*,
438 U.S. 478 (1978)..............................................................................39

*California v. Hodari D.*,
499 U.S. 621 (1991)..............................................................................28

*Carnaby v. City of Houston*,
636 F.3d 183 (5th Cir. 2011) ..........................................................13, 19

*Carroll v. Ellington*,
800 F.3d 154 (5th Cir. 2015) ..........................................11, 32, 36, 37

*City and County of San Francisco v. Sheehan*,
575 U.S. 600 (2015)..............................................................................20

*City of Tahlequah v. Bond*,
595 U.S. 9 (2021) (*per curiam*) ...........................................................44

*Cole v. Carson*,
802 F.3d 752 (5th Cir. 2015) ...............................................................40

*Cole v. Carson*,
935 F.3d 444 (5th Cir. 2019) (en banc) ...............................................42

*Cooper v. Brown*,
844 F.3d 517 (5th Cir. 2016) .......................... 11, 32, 33, 34, 35, 36

*Craig v. Martin*,
49 F.4th 404 (5th Cir. 2022) ...............................................................19

*Curran v. Aleshire*,
800 F.3d 656 (5th Cir. 2015) ...........................................................2, 12

*Deville v. Marcantel*,
567 F.3d 156 (5th Cir. 2009) (per curiam) ....................................27, 36

*District of Columbia v. Wesby*,
   583 U.S. 48 (2018)................................................................................44, 45

*Escobar v. Montee*,
   895 F.3d 387 (5th Cir. 2018) ........................................................................26

*Flores v. City of Palacios*,
   381 F.3d 391 (5th Cir. 2004) ........................................................................21

*Freeman v. County of Bexar*,
   210 F.3d 550 (5th Cir. 2000) ........................................................................38

*Freeman v. Gore*,
   483 F.3d 404 (5th Cir. 2007) ................................................................12, 21

*Garcia v. Blevins*,
   957 F.3d 596 (5th Cir. 2020 (PER CURIAM)) .......................................................18

*Garcia v. Orta*,
   47 F.4th 343 (5th Cir. 2022)..........................................................................1

*Gomez v. Chandler*,
   163 F.3d 921 (5th Cir. 1999) ........................................................................27

*Graham v. Connor*,
   490 U.S. 386 (1989)............................. 21, 22, 23, 24, 25, 26, 27, 28, 30, 40, 43

*Griggs v. Brewer*,
   841 F.3d 308 (5th Cir. 2016) ..............................................................12, 13, 26

*Groh v. Ramirez*,
   540 U.S. 551 (2004) (Kennedy, J., dissenting)..................................................39

*Hare v. City of Corinth, Miss.*,
   135 F.3d 320 (5th Cir. 1998) ................................................................16, 18

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982)....................................................................................41

*Harmon v. City of Arlington*,
   16 F.4th 1159 (5th Cir. 2021) ..............................................................18, 42, 43

*Hart v. O'Brien*,
  127 F.3d 424 (5th Cir. 1997) ...................................................................38

*Heien v. North Carolina*,
  574 U.S. 54 (2014)....................................................................................39

*Henderson v. Harris County*,
  51 F.4th 125 (5th Cir. 2022) ...............................................................35, 47

*Hill v. Carroll County*,
  587 F.3d 230 (5th Cir. 2009) ...................................................................22

*Hunter v. Bryant*,
  502 U.S. 224 (1991)..................................................................15, 16, 18, 38

*Joseph v. Bartlett*,
  981 F.3d 319 (5th Cir. 2020) ...................................................................12

*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015)..................................................................................24

*Kisela v. Hughes*,
  584 U.S. 100 (2018) (*per curiam*) ........................................................44

*Lincoln v. Turner*,
  874 F.3d 833 (5th Cir. 2017) ...................................................................47

*Luna v. Mullenix*,
  765 F.3d 531 (2014) (*Luna I*) ................................................................16

*Luna v. Mullenix*,
  773 F.3d 712 (5th Cir. 2014) (*Luna II*)..................................................17

*Mace v. City of Palestine*,
  333 F.3d 621 (5th Cir. 2003) ...................................................................41

*Malley v. Briggs*,
  475 U.S. 335 ............................................................................................38

*Manis v. Lawson*,
  585 F.3d 839 (5th Cir. 2009) ...................................................................19

*Meadours v. Ermel*,
    483 F.3d 417 (5th Cir. 2007) ...................................................................21, 32

*Mi Familia Vota v. Ogg*,
    105 F.4th 313 (5th Cir. 2024) .......................................................................18

*Morgan v. Swanson*,
    659 F.3d 359 (5th Cir. 2011) (en banc) ...................................................41, 42, 46

*Morrow v. Meachum*,
    917 F.3d 870 (5th Cir. 2019) .......................................................................41, 47

*Mullenix v. Luna*,
    577 U.S. 7 (2015).....................................................................................17, 42, 43

*Newman v. Guedry*,
    703 F.3d 757 (5th Cir. 2012) .................................................................11, 33, 37

*Ontiveros v. City of Rosenberg*,
    564 F.3d 379 (5th Cir. 2009) .......................................................................20, 22

*Orr v. Copeland*,
    844 F.3d 484 (5th Cir. 2016) .........................................................................1, 46

*Pearson v. Callahan*,
    555 U.S. 223 (2009).....................................................................................18, 39

*Pfannstiel v. City of Marion*,
    918 F.2d 1178 (5th Cir. 1990) ...........................................................................46

*Pierce v. Smith*,
    117 F.3d 866 (5th Cir. 1997) .......................................................................42, 43

*Plumhoff v. Rickard*,
    572 U.S. 765 (2014).......................................................................................1, 45

*Poole v. City of Shreveport*,
    13 F.4th 420 (5th Cir. 2021) ..........................................................................1, 12

*Poole v. City of Shreveport*,
    691 F.3d 624 (5th Cir. 2012) .......................................................................21, 36

*Pratt v. Harris County*,
 822 F.3d 174 (5th Cir. 2016) ................................................................14

*Reese v. Anderson*,
 926 F.2d 494 (5th Cir. 1991)................................................................22

*Rivas-Villegas v. Cortesluna*,
 595 U.S. 1 (2021)..........................................................................43, 44

*Robles v. Ciarletta*,
 797 Fed. Appx. 821 (5th Cir. 2019)......................................................26

*Rogers v. Hall*,
 46 F.4th 308 (5th Cir. 2022) ...........................................................45, 46

*Romero v. City of Grapevine*,
 888 F.3d 170 (5th Cir. 2018) ................................................................18

*Roque v. Harvel*,
 993 F.3d 325 (5th Cir. 2021) ................................................................18

*Salazar v. Molina*,
 37 F.4th 278 (5th Cir. 2022) ........................................24, 25, 27, 35, 37

*Salazar-Limon v. City of Houston*,
 826 F.3d 272(5th Cir. 2016) ................................................................40

*Saldana v. Garza*,
 684 F.2d 1159 (5th Cir. 1982) ..............................................................46

*Saucier v. Katz*,
 533 U.S. 194 (2001)..........................................22, 38, 39, 40, 44

*Scott v. Harris*,
 550 U.S. 372 (2007)..........................................1, 12, 16, 19, 47

*Shumpert v. City of Tupelo*,
 905 F.3d 310 (5th Cir. 2018) ................................................................45

*Smith v. Freland*,
 954 F.2d 343 (6th Cir. 1992) ................................................................22

*Smith v. Heap*,
31 F.4th 905 (5th Cir. 2022) ..................................................................48

*Solis v. Serrett*,
31 F.4th 975 (5th Cir. 2022) ......................................1, 22, 40, 45, 46

*Sorenson v. Ferrie*,
134 F.3d 325 (5th Cir. 1998) ................................................................46

*Stroik v. Ponseti*,
35 F.3d 155 (5th Cir. 1994)...................................................................22

*Tarver v. City of Edna*,
410 F.3d 745 (5th Cir. 2005) ................................................................21

*Terrell v. Allgrunn*,
114 F.4th 428 (5th Cir. 2024) ................................................................2

*Thompson v. Upshur County*,
245 F.3d 447 (5th Cir. 2001) ................................................................18

*Tolan v. Cotton*,
572 U.S. 650 (2014)........................................................................20, 41

*Tucker v. City of Shreveport*,
998 F.3d 165 (5th Cir. 2021) ................................................................21

*Vann v. City of Southaven*,
884 F.3d 307 (5th Cir. 2018) (*per curiam*)........................................47

*Vincent v. City of Sulphur*,
805 F.3d 543 (5th Cir.), *cert. denied*, 578 U.S. 907 (2016) ........41, 45

*Waganfeald v. Gusman*,
674 F.3d 475 (5th Cir. 2012) ................................................................42

*White v. Pauly*,
580 U.S. 73 (2017) (*per curiam*) .....................................................1, 42

*Wilson v. City of Bastrop*,
26 F.4th 709 5th Cir. 2022..................................................................18

*Wilson v. Layne*,
  526 U.S. 603 (1999)..................................................................................45

**Constitutions**

Fourth Amendment
  ............................ 10, 16, 17, 19, 20, 21, 22, 24, 28, 35, 36, 37, 38, 40, 43, 44, 47

First and Fourteenth Amendments........................................................................9

**Statutes**

28 U.S.C. § 1291 ......................................................................................................1

**Court Rules**

5th Cir. R. 25.2.1 ...................................................................................................49

5th Cir. R. 25.2.13 .................................................................................................49

5th Cir. R. 32.1 ......................................................................................................49

Fed. R. App. P. 32(a)(5) ........................................................................................49

Fed. R. App. P. 32(a)(6) ........................................................................................49

Fed. R. App. P. 32(a)(7)(B) ...................................................................................49

Fed. R. App. P. 32(f)..............................................................................................49

## JURISDICTIONAL STATEMENT

This is an interlocutory appeal of a district court order denying a motion for summary judgment on, inter alia, qualified immunity to City of Santa Fe, Texas, police officer Christian Carranza. *See Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014); *Solis v. Serrett*, 31 F.4th 975, 980 (5th Cir. 2022). The court has jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine to decide the legal question of whether material evidence proves Officer Carranza violated clearly established constitutional law. *See White v. Pauly*, 580 U.S. 73, 76-78 (2017) (*per curiam*); *Solis*, 31 F.4th at 980.

The court has "jurisdiction to decide whether the district court erred in concluding as a matter of law that [Officer Carranza] is not entitled to qualified immunity on a given set of facts." *Solis*, 31 F.4th at 980 (internal quotations omitted). "[T]his court can review whether any factual dispute found by the district court is material for summary judgment purposes." *Id.*

Additionally, on interlocutory appeal of denial of qualified immunity, the Court is not bound by the district court's *legal conclusions* regarding whether a reasonable jury could believe information which recordings in evidence blatantly contradicts. Compare, *Scott v. Harris*, 550 U.S. 372, 388 (2007); *Poole v. City of Shreveport*, 13 F.4th 420, 424 (5th Cir. 2021); *Garcia v. Orta*, 47 F.4th 343, 349-53 (5th Cir. 2022); *Orr v. Copeland*, 844 F.3d 484, 490-91 (5th Cir. 2016).

1

"Where video evidence is available, there is an 'exception to the materiality/genuineness rule cited above'" regarding the scope of review of evidence on an interlocutory appeal.  *Bailey v. Ramos*, 125 F.4th 667, 675 (5th Cir. 2025) (quoting *Curran v. Aleshire*, 800 F.3d 656, 663 (5th Cir. 2015)); accord *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir), *cert. denied*, *Argueta v. Jaradi*, 145 S. Ct. 435 (2024); *Terrell v. Allgrunn*, 114 F.4th 428, 438 (5th Cir. 2024).

## STATEMENT OF THE ISSUE

Whether Appellee Taylor Rogers has refuted Officer Carranza's qualified immunity asserted through a motion for summary judgment.

## STATEMENT OF THE CASE

### A.    Summary of Material Evidence

On August 19, 2021, Appellee Taylor Rogers committed the felony crime of evading arrest or detention by motor vehicle. ROA.25-40367.516-523, 556, 567-580. On the day Rogers committed that crime, Christian Carranza was on duty serving as a City of Santa Fe, Texas, police officer when he responded at approximately 8:26 a.m.[1] to assist Santa Fe Independent School District (ISD) police officers in the vicinity of the 3400 block of Avenue S to detain Rogers. ROA.471-476, 579-580. Officer Carranza's police employee number is 404737 and his police radio call number was 6S12. ROA.471. The police dispatch record, highlighted in

---

[1] All further citations to time will be during a.m. hours.

yellow, provides an abbreviated summary of Officer Carranza's actions on that date. ROA.477-479.

Upon Officer Carranza's arrival outside the elementary school, he discovered a motorist's vehicle had collided with a Santa Fe ISD police vehicle and that Santa Fe ISD police Sergeant Rubin Espinoza and Santa Fe ISD police officer Elizabeth "Cibby" Moore had arrested the driver of the vehicle, Rogers. ROA.471-472, 486, 523-529. When Officer Carranza exited his police vehicle, he observed Rogers lying prone in a grassy area with handcuffs attached to her wrists behind her back. ROA.472, 486, 527, 579-580.

Through the Texas Commission on Law Enforcement (TCOLE) training curriculum, Officer Carranza had been taught that utilizing a prone detention position is generally appropriate for the purpose of gaining and maintaining control of a non-compliant criminal suspect, including a suspect who is actively resisting. ROA.472. When Officer Carranza encountered Rogers, school district officers had already positioned Rogers prone in a grassy area with handcuffs attached to her wrists behind her back. ROA.472, 487, 530, 579-580. Officer Carranza had no information to suggest or reason to believe he should move Rogers into any different position. ROA.472, 488.

Rogers was actively physically noncompliant with Officer Carranza's efforts to control Rogers' movements to detain her, so Officer Carranza believed some force

3

was necessary to maintain control of Rogers' resistance to detention. ROA.472, 487-488, 530-533, 579-580. When an arrestee is in the prone position, the ground provides a barrier that inhibits, to some degree, a suspect's ability to resist detention in one direction and provides a basis for utilizing leverage techniques to manage resistance above the ground. ROA.472. Typically, the prone position is particularly useful in a grassy area because the risk of harm to an actively non-compliant detainee is generally minimal on such a surface. ROA.472.

Unaware of the fact when he first found Rogers in the position in which the arresting officers had placed her, Officer Carranza later discovered the grass concealed ants below it, but when Officer Carranza encountered Rogers, Officer Carranza did not know, or suspect, ants were present. ROA.472, 579-580. Had Officer Carranza suspected ants were under this grass, he may have tried to reposition Rogers sooner but, regardless of the ants, Officer Carranza still needed to maintain control of Rogers' active resistance. ROA.472.

If Officer Carranza had suspected ants were under the grass, he likely would not have positioned his own body as he did in which allowed ants to access Officer Carranza's lower body, ROA.473, when Officer Carranza placed both of his knees, legs and feet in the same area in which Rogers was lying. ROA.473, 579-580. Throughout the time Officer Carranza detained Rogers prone in the grass, Officer Carranza remained in the same grassy area as Rogers, but Officer Carranza did not

4

know ants were under the grass until Rogers reported she felt ants. ROA.473, 579-580.

Within seconds after Rogers stated ants were getting on her, Officer Carranza, with the help of others, promptly raised Rogers from the grass away from the ants. ROA.473, 579-580. After Officer Carranza discovered ants were present, he did not detain Rogers in the grass any longer than was necessary to maintain control of Rogers' physical non-compliance to detention. ROA.473, 579-580.

Through TCOLE curriculum, Officer Carranza had also been trained that officers are permitted to apply force that is proportional to the need for force. ROA.473. Based on that training, it is Officer Carranza's understanding that the proportionality principle serves as a general guide for an officer when deciding whether a force option may appropriately be used in a particular situation. ROA.473. The proportionality principle provides for consideration of officer and suspect factors and special circumstances that could potentially influence an appropriate method and level of authorized use of force based on the totality of the circumstances in a particular situation. ROA.473. Officer Carranza was taught that application of proportionality provides reasonably measured responses to a criminal suspect's: (1) noncompliance with police commands; (2) efforts to evade arrest; and (3) forceful resistance to arrest. Officer Carranza also learned through TCOLE instruction that

the proportionality concept has also been described in law enforcement training as the application of a use of force continuum. ROA.473.

Officer Carranza did not remove Rogers from her vehicle. ROA.474, 579-580. Officer Carranza did not place Rogers in the grass. ROA.474, 579-580. Officer Carranza did not place handcuffs on Rogers' wrists. ROA.474, 579-580. And Officer Carranza had no reason to believe it was inappropriate for other officers to have detained Rogers in this manner. ROA.474, 579-580. Officer Carranza did not strike Rogers. Officer Carranza did not use any weapon against Rogers. ROA.474, 579-580.

Officer Carranza simply grasped Rogers' body and utilized the leverage necessary to maintain control of her physical non-compliance with detention. ROA.474, 579-580. Throughout the duration of Officer Carranza's reactions to force Rogers used to resist detention, Officer Carranza consistently informed Rogers that when she stopped moving, Officer Carranza would respond in kind. ROA.474, 536, 579-580.

Before Rogers recognized any ants were on her, she was trying to rise from the ground, despite instructions to remain still. ROA.533-535. Rogers testified she had no idea how long she was on the ground before she recognized there were ants on the ground. ROA.536-537. When Officer Carranza was reacting to repetitious non-compliant comments Rogers was making and non-compliant physical force

6

Rogers used to avoid detention before Rogers first reported ants were getting on her at 8:27:50, Rogers used the following force: (1) rotated her torso laterally attempting to roll her body several times; (2) rolled onto the right side of her body several times; (3) raised her shoulders off the ground; (4) raised her legs off the ground; and (5) bent her legs to use them to push herself up from the ground. ROA.474, 579-580. Had Rogers successfully repositioned her body in such a way, she would have eliminated the tactical advantage Officer Carranza had when he secured Rogers against the grass, and Rogers' movement may have created a need for Officer Carranza to use greater force against Rogers to regain control of her resistance. ROA.474, 579-580.

When Rogers realized ants were on her, she "immediately verbalized" that fact. ROA.538. Within three seconds of Rogers claiming ants were getting on her, Officer Carranza and Officer Wesley Rehm confirmed the presence of ants. ROA.474, 490-491, 579-580. Within seven seconds of Rogers claiming ants were getting on her, other officers and Officer Carranza were repositioning themselves to raise Rogers from the grass. ROA.474, 490-491, 539, 579-580. Yet Rogers' continued physical resistance delayed the officers' efforts to raise Rogers from the grass by approximately 15 seconds. ROA.475, 579-580. Nonetheless, by 8:28:21, Rogers was raised off the grass. ROA.475, 539-540, 579-580. Thus, officers moved

Rogers from the area in which she reported ants within approximately 30 seconds of Rogers' report.

After officers raised Rogers from the grass, officers other than Officer Carranza took control of Rogers' detention at the scene and undertook Rogers' transport to the Santa Fe police station. ROA.475, 477-480, 489, 542-543, 579-580. Officer Rehm transported Rogers to the police station while Officer Carranza remained at the scene of the arrest to investigate the motor vehicle collision. ROA.475, 477-480, 543-547, 579-580. A couple of hours after Rogers arrived at the Galveston County Jail, the ant bites started swelling. ROA.561-562.

Officer Rehm's employee number is 410989 and his radio number that day was 6S19. ROA.475, 477-480. Those significations on the Santa Fe Police Department Even Report demonstrate the officers' respective distinct roles during the occurrences which form the basis of this litigation. ROA.475, 477-480. Officer Carranza did not use any force against Rogers after she rose from the grass, and Officer Carranza did not have any role in Rogers' detention from the time she rose from the grass until the ants were off Rogers' body. ROA.475, 579-580.

The minimal force Officer Carranza used to control Rogers' actions was necessary to respond to Rogers' resistance and was consistent with TCOLE training instruction to use proportional force necessary to control and detain an actively non-compliant criminal suspect. ROA.475, 579-580. Officer Carranza is not aware of

any police training standard, or other established police procedure that required Officer Carranza to perform his police duties differently than he executed them. ROA.475. Officer Carranza knows of no law or constitutional provision that required him to perform his duties differently. Officer Carranza performed his law enforcement duties in accordance with training provided through the Texas Commission on Law Enforcement (TCOLE). ROA.475. Officer Carranza has no reason to believe he could not reasonably rely on TCOLE training to provide him with appropriate guidance for executing the police duties at issue in this litigation. ROA.476.

## B.     Summary of Procedural History

Rogers filed a suit against Officer Carranza and others. ROA.13. After Rogers amended her complaint, ROA.158, the Court granted in part, ROA.209, Officer Carranza's motion to dismiss Rogers' claims against him under the First and Fourteenth Amendments. ROA.314-316.

Officer Carranza answered the complaint, denied Rogers' allegations and asserted defenses, including qualified immunity. ROA.326-330. After the parties completed discovery, Officer Carranza moved for summary judgment based on the objective reasonableness of his actions and his qualified immunity. ROA.451-582, 782. Rogers responded in opposition to Officer Carranza's summary judgment

motion. ROA.585-625. Officer Carranza replied in support of his summary judgment motion. ROA.649-670.

Officer Carranza also moved to exclude inadmissible testimony from Rogers' expert, Keith Howse. ROA.687-737. Rogers responded in opposition to Officer Carranza's motion to exclude testimony from Keith Howse. ROA.738-746.

On June 4, 2025, the district court denied Officer Carranza's motion for summary judgment, including Officer Carranza's claim of qualified immunity. ROA.765-767. The district court concluded that, as to Rogers' claim Officer Carranza violated the Fourth Amendment, "four disputed facts preclude summary judgment: (1) [Officer] Carranza's continued use of leg leverage on Rogers after she had been subdued and stopped struggling; (2) [Officer] Carranza's failure to remove Rogers from the ant pile immediately upon learning of the ants; (3) [Officer] Carranza's attempt to subdue Rogers against the ground by folding her legs and kneeling on them after [Officer] Carranza knew ants were on Rogers and biting her; and (4) [Officer] Carranza's failure to render aid or remove the biting ants after standing Rogers up, handing her off to another officer, and escorting her to the police department." ROA.765-766.

The district court concluded that, "[f]or the same reasons, [Officer] Carranza is also not entitled to qualified immunity at this stage." ROA.766. The district court wrote further:

10

*Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("[O]nce a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive."); *Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016) ("[O]nce an arrestee stops resisting, the degree of force an officer can employ is reduced."); *Newman v. Guedry*, 703 F.3d 757, 763-64 (5th Cir. 2012) ("Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.").

On June 18, 2025, Officer Carranza timely filed a notice of interlocutory appeal of the order denying his motion for summary judgment asserting qualified immunity. ROA.772-779.

## SUMMARY OF THE ARGUMENT

The Court has jurisdiction to analyze and correct the legal errors in the district court's order denying summary judgment to Officer Carranza. Officer Carranza is entitled to judgment in his favor because appropriate application of the undisputed material facts to controlling legal authority establishes that Officer Carranza used reasonable force that conformed with existing constitutional law.

The record establishes all of the following: (1) an objective police officer could reasonably believe Officer Carranza's use of leverage to control Rogers for 37 seconds was reasonable under the totality of the circumstances; (2) an objective officer could reasonably believe Officer Carranza acted with reasonable dispatch to remove Rogers from the grass upon discovering ants were biting Rogers; (3) an objective officer could reasonably believe that holding Rogers' legs in place for eight seconds to maintain control of her was reasonable under the totality of the

11

circumstances: and (4) an objective officer could reasonably rely on other officers who took custody of Rogers to aid her in removing the ants after Rogers' arrest. The record also establishes that no clearly established constitutional law precluded Officer Carranza from performing his duties as he did under the totality of the circumstances thrust upon him. Accordingly, Officer Carranza is entitled to summary judgment.

## ARGUMENT

**A.     The de novo standard of review applies to analysis of the record.**

"This Court reviews de novo the district court's resolution of legal issues on a motion for summary judgment on the basis of qualified immunity." *Griggs v. Brewer*, 841 F.3d 308, 311 (5th Cir. 2016) (citing *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007)).

In the interlocutory appeal of a district court's denial of qualified immunity, the Court's jurisdiction "is generally limited to examining the *materiality* (*i.e.*, legal significance) of factual disputes the district determined were genuine, not their genuineness (*i.e.*, existence)." *Argueta*, 86 F.4th at 1088 (emphasis in original) (citing *Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020)). "But an exception exists: [the Court is] permitted to review genuineness where, as here, video evidence is available." *Argueta*, 86 F.4th at 1088 (citing *Poole*, 13 F.4th at 424 (citing *Scott*, 550 U.S. at 380-81 and *Curran*, 800 F.3d at 663-64. Therefore, in the Court's de

12

novo review, "although courts view evidence in the light most favorable to the nonmoving party, they give greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Griggs*, 841 F.3d at 311 (citing *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)). De novo analysis of the record under these controlling authorities demonstrates that Officer Carranza is entitled to judgment in his favor.

**B.     Whether the force Officer Carranza used was objectively unreasonable and violated clearly established constitutional law are two separate legal questions for the court to resolve, not questions of fact for a jury.**

The district court erred when it concluded that "four disputed facts preclude summary judgment: (1) [Officer] Carranza's continued use of leg leverage on Rogers after she had been subdued and stopped struggling; (2) [Officer] Carranza's failure to remove Rogers from the ant pile immediately upon learning of the ants; (3) [Officer] Carranza's attempt to subdue Rogers against the ground by folding her legs and kneeling on them after [Officer] Carranza knew ants were on Rogers and biting her; and (4) Carranza's failure to render aid or remove the biting ants after standing Rogers up, handing her off to another officer, and escorting her to the police department." ROA.765-766.

But the appropriate evaluation of the record must include an analysis of the totality of the circumstances evidencing material facts. When the entire record is more precisely examined in accordance with the undisputed material evidence –

13

including recordings – under the totality of the circumstances as required under the governing legal standard, *Barnes v. Felix*, __ U.S. __, 145 S. Ct. 1353, 1356-1357 (2025), these isolated facts the district court identified in its order are not disputed, so there is nothing a jury need judge for the Court to apply governing legal standards to the facts. *See also See Anderson v. Estrada*, 140 F.4th 634, 644 (5th Cir. 2025).

The undisputed evidence, including recordings, proves the following facts. After Rogers had led officers on a vehicular chase through an elementary school parking lot during a time when students were walking to school, and after Rogers had continued to actively resist detention while she was placed in the grass and handcuffs were on her wrists:[2] (1) Officer Carranza continued use of leverage to control Rogers for 13 seconds (from 8:27:37 until 8:27:50) after she *may have* temporarily stopped struggling for 13 seconds; (2) When Rogers realized ants were on her, she "immediately verbalized" that fact. ROA.538. Within three seconds of Rogers claiming ants were getting on her, Officer Carranza and Officer Wesley Rehm confirmed the presence of ants. ROA.474, 490-491, 579-580. Within seven seconds of Rogers claiming ants were getting on her, other officers and Officer Carranza were repositioning themselves to raise Rogers from the grass. ROA.474, 490-491, 539, 579-580. Rogers' actions delayed, by approximately 15 seconds the

---

[2] "[T]hat [Rogers] was handcuffed has no necessary bearing on whether [s]he was a threat." *Anderson*, 140 F.4th at 644 (citing *Pratt v. Harris County*, 822 F.3d 174, 178-82 (5th Cir. 2016)).

officers' efforts to raise Rogers from the grass. ROA.475, 579-580. By 8:28:21, Rogers was raised off the grass. ROA.475, 539-540, 579-580; (3) After Officer Carranza knew ants were biting Rogers, for eight seconds, from 8:28:12 and 8:28:20 Officer Carranza attempted to subdue Rogers against the ground by folding her legs and kneeling on them; and (4) After Rogers was raised from the grass, other officers took custody of Rogers' detention at the scene of the arrest and Rogers' transport to the Santa Fe police station. ROA.475, 477-480, 489, 542-543, 579-580. Those officers' efforts to mitigate the presence of the ants on Rogers began at 8:28:33, within 10 seconds of Rogers being raised to her feet, when then Santa Fe school district police chief, Walter Braun, who was standing near Officer Carranza, directed the officers who had taken custody of Rogers to "get some water on her face to get the ants off." ROA.579. After another officer took custody of Rogers, Officer Carranza relied on that officer to aid Rogers in removing ants. ROA.475, 579.

This evidence is not disputed. But instead of analyzing and applying governing law to these facts as precedent requires, the district court declined to perform its judicial role and delegated that legal duty to a jury, in contravention of controlling legal authorities. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). In doing so, the district court erred by: (1) mischaracterizing as "disputed facts," ROA.765, the legal issues of whether the force Officer Carranza used, based on the undisputed material facts evidenced by the record, was unreasonable under the

15

Fourth Amendment or violated clearly established constitutional law; and (2) by failing to rule on those two legal issues.

In *Luna v. Mullenix*, 765 F.3d 531, 538 (2014) (*Luna I*), a panel of this Court initially opined the "immediacy of the risk posed by [plaintiff's decedent] **is a disputed fact that a reasonable jury could find either in the plaintiffs' favor or in the officer's favor**, precluding us from concluding that [Trooper] Mullenix acted objectively reasonably as a matter of law." (emphasis added).

This is essentially the same insupportable conclusion the district court reached in the case now before this Court. Under qualified immunity doctrine, the fate of officers, like Officer Carranza, does not lie in the hands of jurors when legal grounds for dismissal of the suit are presented to the court before trial. *See Hunter*, 502 U.S. at 227 ("Immunity ordinarily should be decided by the court long before trial."); *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 329 (5th Cir. 1998).

In her dissenting opinion in *Luna I*, Fifth Circuit Judge Carolyn Dineen King appropriately characterized the purported "'fact issue' referenced by the majority" in the first *Luna* panel Fifth Circuit opinion as "simply a restatement of the objective reasonableness test that applies to Fourth Amendment excessive force claims," which, Judge King noted, the Supreme Court has held "'is a pure question of law.'" *Id.*, at 544-545 (quoting *Scott*, 550 U.S. at 381, n. 8).

Ultimately, the *Luna I* panel withdrew *Luna I* and substituted *Luna v.*

16

*Mullenix*, 773 F.3d 712, 720 (5th Cir. 2014) (*Luna II*), wherein the panel partially corrected the error in its first opinion and recognizing "that objective reasonableness test is a question of law that can be resolved on summary judgment – as Judge King had explained in her [earlier] dissent." *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

Later, in addition to discussing the merits of Judge King's dissent in the withdrawn *Luna I* opinion, the United States Supreme Court's analysis and decision in *Mullenix*, 577 U.S. at 10-11, 13-10 further confirmed that **whether a given course of conduct justified force used** is also a *legal question* for the court, not a *factual dispute* for a jury that precludes summary judgment. In *Mullenix*, 577 U.S. at 11-14, the Supreme Court also rejected a different, but related, similar error in the *Luna II* opinion regarding the panel opining "the law was clearly established such that a reasonable officer would have known that the use of [unreasonable] force, absent a sufficiently substantial imminent threat, violated the Fourth Amendment." The qualified immunity question is a legal issue for the court's decision based on the court's analysis of "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 308 (emphasis added) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

The Supreme Court has "repeatedly told courts … not to define clearly established law at a high level of generality." *Mullenix*, 577 U.S. at 12 (quoting *al-Kidd*, 563 U.S. at 742. Addressing this issue in *Argueta*, 86 F.4th at 1089, the Fifth

17

Circuit Court found when analyzing a district court summary judgment order,

> [a]s a preliminary matter, we are not persuaded that the […] "fact dispute" is a question of fact at all. Rather, as explained below, it is a legal determination that turns on *other* factual issues."

The *Argueta* court elaborated at length regarding this issue, explaining that the risk a detainee's action presents and the reasonableness of an officer's force used in response to a detainee's action have been "repeatedly recognized" as "part of our objective-reasonableness analysis, a legal inquiry…" *Id.* at 1092-93 (citing *Wilson v. City of Bastrop*, 26 F.4th 709 5th Cir. 2022); *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021); *Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021); *Garcia v. Blevins*, 957 F.3d 596, 600-02 (5th Cir. 2020 (PER CURIAM)); *Romero v. City of Grapevine*, 888 F.3d 170, 176-77 (5th Cir. 2018).

Despite these controlling authorities, the district court did not perform its judicial role of applying controlling legal standards to the undisputed material facts evidenced by the summary judgment record. Officer Carranza is entitled to his immunity at the earliest possible stage of the litigation and certainly before trial. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Hunter*, 502 U.S. at 227; *Mi Familia Vota v. Ogg*, 105 F.4th 313, 324 (5th Cir. 2024); *Hare*, 135 F.3d at 329.

Remanding the case to the district court is not necessary on this record and does not serve the purposes of immunity. *See Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). Instead, the Court is now called upon to analyze the record,

so it should apply controlling legal standards to the undisputed material facts evidenced by the summary judgment record, reverse the district court's order denying summary judgment, and render judgment in Officer Carranza's favor. *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022); *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).

**C.    No fact material to resolution of the objective Fourth Amendment or qualified immunity issues is disputed in the evidence.**

No fact material to resolution of the objective Fourth Amendment or qualified immunity issues is disputed in the evidence. The district court's abbreviated conclusions regarding only a few isolated facts, without due consideration of the totality of the circumstances which include other significant facts that provide context and establish the evidence underlying resolution of the legal issues at issue, does not foreclose judgment in favor of Officer Carranza. As discussed in section B of this brief, the district court omitted from its order material facts that should be included in an appropriate analysis of the totality of the facts from the perspective of a reasonable police officer on the scene under the circumstances. *See Anderson*, 140 F.4th at 644.

Also in performing the analysis, "[i]t is appropriate in [evaluating reasonableness] to take into account … [the] relative culpability [of the respective parties]." *Scott*, 550 U.S. at 384; *Carnaby*, 636 F.3d at 188 n.4.

To the extent facts included in the district court order constitute "*other* factual

19

issues," upon which the legal determinations turn, *Argueta supra*, the Court's consideration of those facts must be melded with the totality of the additional facts in evidence which together reveal that no fact material to resolution of the objective Fourth Amendment or qualified immunity issues is disputed.

Alternatively, if the Court finds any dispute in the totality of the evidence, the Court should construe any such disputed fact in the light most favorable to Rogers along with the totality of other facts in evidence and apply governing legal authorities to the evidence, viewed from the perspective of a reasonable law enforcement officer on the scene. *See Tolan v. Cotton*, 572 U.S. 650, 657, 660 (2014); *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 603 (2015). No fact in evidence forecloses judgment in Officer Carranza's favor.

To support a Fourth Amendment claim, Rogers must identify evidence proving she sustained an injury resulting directly and only from force Officer Carranza applied that was excessive to the need under the totality of the circumstances, and that the excessiveness of which was objectively unreasonable. *See Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). "[L]egal reasonableness of a police officer's use of force—for purposes of the Fourth Amendment and qualified immunity—is not evaluated with the benefit of hindsight.

Rather, [the Court's] focus is on the officers' reasonable perception of the events at issue, as they happened, without the aid of hindsight, multiple viewing

20

angles, slow motion, or the ability to pause, rewind, and zoom." *Tucker v. City of Shreveport*, 998 F.3d 165, 176 (5th Cir. 2021).

The "excessive force claim is separate and distinct from [any other] claim, and [the court] must therefore analyze the excessive force claim without regard to whether the [detention] itself was justified." *Freeman*, 483 F.3d at 417; accord *Flores v. City of Palacios*, 381 F.3d 391, 403 (5th Cir. 2004); *Tarver v. City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005).

> [T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," however, its proper application requires careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether [s]he is actively resisting arrest or attempting to evade arrest by flight.

*Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation," *Graham*, 490 U.S. at 396-397. "The 'reasonableness' of a particular use of force must be judged from the perspective of

21

a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

> [W]e must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes 'reasonable' action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Stroik v. Ponseti,* 35 F.3d 155, 158-59 (5th Cir. 1994) (quoting *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) (citing *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991)).

Officers "cannot be held responsible for the unexpected, albeit tragic result, of their use of necessary force." *Hill v. Carroll County*, 587 F.3d 230, 237 (5th Cir. 2009). And the evidence does not prove that Rogers sustained injury resulting directly and only from objectively unreasonable force Officer Carranza used that was excessive to the need under the circumstances. *See Benfer v. City of Baytown*, 120 F.4th 1272, 1281-84 (5th Cir. 2024); *Solis*, 31 F.4th at 983; *Brothers v. Zoss*, 837 F.3d 513, 519 (5th Cir. 2016); *Ontiveros*, 564 F.3d at 382.

Instead, the evidence proves that the minimal force Officer Carranza used to temporarily detain Rogers was objectively reasonable. *See Saucier v. Katz*, 533 U.S. 194, 205 (2001) (under the Fourth Amendment, "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer

would be justified in using more force than in fact was needed"); *Graham*, 490 U.S. at 396; *Argueta*, 86 F.4th at 1091-93.

### 1. An objective officer could reasonably believe Officer Carranza's use of leverage for 37 seconds to detain Rogers was reasonable.

After Rogers led officers on a vehicular chase through an elementary school parking lot during a time when students were walking to school, and Rogers actively resisted detention in the grass even though her wrists were handcuffed, Officer Carranza used leverage to detain Rogers on the ground for 37 seconds (from 8:27:29 to 8:28:06). ROA.579.

During that time span, at 8:27:37 Officer Carranza told Rogers, "I'll stop when you stop." ROA.579. At 8:27:41, Rogers replied "I'm stopping." ROA.579. Nine seconds later, at 8:27:50, Rogers said "ants are getting on my face." ROA.538, 579. Within three seconds of Rogers claiming ants were getting on her, Officers Carranza and Rehm were attempting to confirm the presence of ants. ROA.474, 490-491, 579. Within 14 seconds of Rogers' report of ants, by 8:28:04, Rogers' head was off the ground and her face was no longer in the grass. ROA.579. At 8:28:05. Officer Carranza asked Officer Rehm if he could "secure her [Rogers] in the back of your car." ROA.579. At 8:28:05, Officer Carranza and Officer Rehm began attempting to raise Rogers to her feet but immediately Rogers resumed her former active resistance by spinning toward Officer Rehm and away from Officer Carranza. ROA.579. Due to Rogers' aggression, at 8:28:09, Officer Rehm pressed Rogers down into the grass

to control her physical resistance. ROA.579. Officer Carranza then began, at 8:28:09 to attempt to control Rogers' legs. ROA.579.

At 8:28:11 Officer Rehm told Rogers "we're trying to get you up, calm down." ROA.579. At 8:28:16, Officer Rehm asked Rogers "are you going to calm down?" ROA.579. At 8:28:18, Rogers said, "Yes, I will calm down." ROA.579. At 8:28:20, Officer Rehm and Officer Carranza again began to lift Rogers off the ground. ROA.579. By 8:28:22, Rogers was on her feet and Officer Rehm began escorting Rogers toward a police vehicle. ROA.579.

In deciding whether a police officer has used unreasonable force, "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "But we must begin with the three *Graham* factors." *Anderson*, 140 F. 4th at 643. "In *Graham* …, the [Supreme] Court emphasized that our excessive-force inquiry must be fact-intensive." *Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022). "It 'requires a careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the

24

safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. at 396).

Based upon the occurrences which form the basis of this suit, Rogers was arrested and convicted of committing the felony crime of evading arrest or detention in a motor vehicle. ROA.562-578. That crime is severe. During Rogers' commission of that felony crime, she obviously evaded arrest by flight. And even after her vehicle collided with a police vehicle, and school district police officers placed Rogers on the ground, Rogers continued to actively physically resist being detained. Rogers' actions throughout her crime spree endangered officers. *See Anderson*, 140 F.4th at 644. "[W]hether resistance is active or passive does not turn solely whether an arrestee poses a serious physical threat." *Id.* at 645. "The separate factors should not be conflated." *Id.*

"While the second *Graham* factor examines the threat the arrestee poses to law enforcement, the third considers the degree of the arrestee's resistance. *Id.* "[A]n arrestee actively resists by ignoring an officer's order to stop doing something or to refrain from doing something." *Benfer*, 120 F.4th at 1278, 1282-83.

> As soon as resistance escalates into any physical action beyond nonthreateningly pulling his hand back, the arrestee is actively resisting. Repeated attempts to withdraw from an officer or declining to follow an officer's orders constitute active resistance. *Betts*, 22 F.4th at 584. "Pulling, twisting, turning, or walking" toward or away from an officer amount to active resistance when those actions frustrate the officer's objective or disobey an officer's order.

*Anderson*, 140 F.4th at 646.

"[T]he third *Graham* factor concerns the degree to which an arrestee resists the officer's mission or objective." *Id*. at 645. "An arrestee who is [both] "restrained and subdued is not actively resisting." *Id*. at 645. "But those characteristics of passive resistance are conjunctive: that a suspect is handcuffed does not end the inquiry." *Id*.; *see also Griggs*, 841 F.3d at 315-16. "[U]se of force against a handcuffed suspect is not excessive if the suspect is resisting commands." *Bailey*, 125 F. 4th at 684. "[T]his court's cases 'do[] not establish that when mere passive resistance is at issue, officers are precluded from using any force, but instead that the amount of reasonable force varies.'" *Anderson*, 140 F.4th at 646 (quoting *Robles v. Ciarletta*, 797 Fed. Appx. 821, 828 (5th Cir. 2019)); *see also Escobar v. Montee*, 895 F.3d 387, 394-95 (5th Cir. 2018).

"At various points in time while Rogers was on the ground, more than one officer was needed to control Rogers' aggression and physical acts of resistance and at one point three officers were needed. ROA.579. Rogers never voluntarily complied with requests or commands for peaceful submission to detention and was only controlled through use of necessary physical force. ROA.579. Rogers was, therefore, "capable of and evinced erratic behavior." *See Anderson*, 140 F.4th at 644 (quoting *Griggs*, 841 F.3d at 316). "That is enough to establish a threat because any

of the officers could be injured by [Rogers'] kicking, thrashing, and throwing [her]self around." *Id*.

"[O]fficers must assess not only the need for force, but also the 'relationship between the need and the amount of force used.'" *Deville*, 567 F.3d at 167 (*Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999); *Salazar v. Molina*, 37 F.4th 278, 281 (5th Cir. 2022) ("the permissible degree of force depends on the *Graham* factors.")).

Officer Carranza began by merely grasping Rogers' right shoulder from 8:26:04, but at 8:26:39 Rogers resisted detention by moving and rolling her body to which Officer Carranza responded at 8:26:47 by attempting to also hold Rogers' left arm to the ground. ROA.579. At 8:26:50. Officer Carranza told Rogers, "stop moving then, I'll stop when you stop." ROA.579. Officer Carranza then repositioned his hands against the center of Rogers' back, but that proved ineffective at 8:27:20 when Rogers spun her torso free from Officer Carranza's control. ROA.579. At this point, assistance from school district Officer Cibby Moore and Officer Rehm was needed for Officer Carranza to temporarily regain control of Rogers' active resistance. ROA.579. Because Rogers was then using her entire body to resist detention, Officer Carranza held Rogers' torso and used his left arm to take advantage of leverage to detain Rogers for 37 seconds. ROA.579. This tactic proved successful to a degree for that period of time. ROA.579.

Officer Carranza did not strike, punch, hit, kick, or use any weapon against Rogers. Instead, Officer Carranza used only his arms and hands to hold Rogers as she actively resisted detention. ROA.579. Officer Carranza's actions demonstrate that to effectively maintain control of Rogers' resistance, Officer Carranza appropriately applied measured, ascending and descending force that was proportional to the level of resistance Rogers presented ROA.472-476, 579. Officer Carranza provided testimony regarding the force he used and the reasons for his reasonable actions that are supported by training approved by the Texas Commission on Law Enforcement. ROA.472-476.

No *Graham* factor favors Rogers. An objective officer could reasonably believe that Officer Carranza's use of leg leverage for 37 seconds to detain Rogers in the grass was not force that was excessive to the need under the totality of the circumstances.

**2.    An objective officer could reasonably believe Officer Carranza acted with reasonable dispatch to remove Rogers from the grass upon discovering ants were biting Rogers.**

Officer Carranza disputes that Rogers being bitten by ants in this context could be construed as a use of force under the Fourth Amendment. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991); *see also Brower v. Inyo County*, 489 U.S. 593, 596 (1989). Officer Carranza did not deliver force against Rogers by using an ant. But assuming, a*rguendo*, without agreeing or conceding that Rogers being bitten by

28

ants in this context could be construed as a use of force the record demonstrates that an objective officer could reasonably believe Officer Carranza acted with reasonable dispatch to remove Rogers from the grass upon discovering ants were biting her. Rogers said at 8:27:50, "ants are getting on my face." ROA.538, 579. Within three seconds of Rogers claiming ants were getting on her, Officers Carranza and Rehm were attempting to confirm the presence of ants. ROA.474, 490-491, 579.

Within 14 seconds of Rogers' report of ants, by 8:28:04, Rogers' head was lifted and her face was no longer in the grass. ROA.579. At 8:28:05 Officer Carranza asked Officer Rehm if he wanted "to secure her [Rogers] in the back of your car." ROA.579. At 8:28:05, Officer Carranza and Officer Rehm began attempting to raise Rogers to her feet but immediately Rogers resumed her former active resistance by spinning toward Officer Rehm and away from Officer Carranza. ROA.579. Due to Rogers' aggression, at 8:28:09, Officer Rehm pressed Rogers down into the grass to control her active resistance. ROA.579. Officer Carranza then began, at 8:28:09 to attempt to control Rogers' legs. ROA.579.

At 8:28:11 Officer Rehm told Rogers "we're trying to get you up, calm down." ROA.579. At 8:28:16, Officer Rehm asked Rogers "are you going to calm down?" ROA.579. At 8:28:18, Rogers said, "Yes, I will calm down." ROA.579. At 8:28:20, Officer Rehm and Officer Carranza again began to lift Rogers off the

29

ground. ROA.579. By 8:28:22, Rogers was on her feet and Officer Rehm began escorting Rogers toward a police vehicle. ROA.579.

Under the *Graham* factors, an objective officer could reasonably believe that Officer Carranza not removing Rogers from the ant pile *immediately* upon learning of the ants was not force that was excessive to the need under the totality of the circumstances.

### 3. An objective officer could reasonably believe holding Rogers' legs in place for eight seconds to maintain control of her was reasonable.

For eight seconds after Officer Carranza knew ants were biting Rogers, from 8:28:12 until 8:28:20, Officer Carranza attempted to subdue Rogers against the ground by folding her legs and kneeling on them. But these facts do not exist in a vacuum and the record demonstrates that analysis of many other facts is essential to evaluating the totality of the relevant circumstances. At 8:28:11 Officer Rehm said to Rogers "we're trying to get you up, calm down." ROA.579. At 8:28:16, Officer Rehm asked Rogers "are you going to calm down?" ROA.579. At 8:28:18, Rogers said, "Yes, I will calm down." ROA.579. At 8:28:20, Officer Rehm and Officer Carranza again began to lift Rogers off the ground. ROA.579. By 8:28:22, Rogers was on her feet and Officer Rehm began escorting Rogers toward a police vehicle. ROA.579.

An objective officer could reasonably believe that Officer Carranza's attempt to subdue Rogers against the ground by folding her legs and kneeling on them for

30

eight seconds after Carranza knew ants were biting Rogers was not force that was excessive to the need under the totality of the circumstances.

### 4. An objective officer could reasonably rely on the other officer who took custody of Rogers to aid her in removing the ants.

By 8:28:22, Rogers was on her feet and Officer Rehm began escorting Rogers toward a police vehicle. ROA.579. Officer Rhem was present at the arrest site and was well-aware that ants were on Rogers. ROA.579. And while Officer Carranza stood near former Santa Fe Independent School District police chief, Walter Braun, Chief Braun directed Officer Rehm "get some water on her face…" ROA.579.

After Rogers was raised from the grass, other officers took control over Rogers' detention at the scene of the arrest and Rogers' transport to the Santa Fe police station. ROA.475, 477-480, 489, 542-543, 579-580. Officer Rehm transported Rogers to the police station while Officer Carranza remained at the scene of the arrest to complete the duties necessary to investigate the motor vehicle collision. ROA.475, 477-480, 543-547, 579-580. A couple of hours after Rogers arrived at the Galveston County Jail, the ant bites started swelling. ROA.561-562.

Officer Rehm's employee number is 410989 and his radio number that day was 6S19. ROA.475, 477-480. Those significations on the Santa Fe Police Department Even Report demonstrate the officers' respective distinct roles during the occurrences which form the basis of this litigation. ROA.475, 477-480.

This Court examines each officer's actions independently to determine whether that officer is entitled to qualified immunity. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007). It is error for the district court to analyze different officers' actions based on a theory that they "acted in unison." *Id.*; *see also Carroll*, 800 F.3d at 174 (internal quotation marks omitted) (citing *Meadours*, 483 F.3d at 422).

An objective officer could reasonably believe that Officer Carranza not personally rendering further aid to, or personally removing ants from, Rogers after lifting Rogers from the grass and handing her off to another officer was not any force by Officer Carranza that was excessive to the need under the totality of the circumstances.

5. **The case opinions the district court cited provide no basis for denying summary judgment to Officer Carranza.**

In the order denying summary judgment to Officer Carranza, the district court identified three case opinions with only parentheticals, and none of those opinions or the general statements of the law for which the cases were ostensibly cited provide a basis for denying judgment to Officer Carranza. ROA.766. The district court cited the opinions, ROA.766, as follows, without further elaboration:

- *Cooper*, 844 F.3d at 524 (5th Cir. 2016) ("[O]nce an arrestee stops resisting, the degree of force an officer can employ is reduced.");

- *Carroll*, 800 F.3d at 177 ("Once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive."); and

32

- *Newman*, 703 F.3d at 763-64 (5th Cir. 2012) ("Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.").

In *Cooper*, 844 F.3d at 521, a police officer stopped Jacob Cooper for suspicion of driving under the influence of an intoxicant. Cooper fled and hid near trash bins. Officer Lynn Brown and her K-9 dog partner, Sunny, responded as backup to the area of the vehicle stop. *Id*. Sunny found and "continued biting Cooper for one to two minutes." *Id*. "During that time, Cooper did not attempt to flee or to strike Sunny." *Id*.

> Brown [] ordered Cooper to roll onto his stomach. He complied, and Brown handcuffed him. But he did not order Sunny to release the bite until after he had finished handcuffing Cooper.

*Id*.

> In *Cooper*,
>
> there was no evidence Cooper posed an immediate threat, and "Cooper was not actively resisting arrest or attempting to flee or strike Sunny. The only act of "resistance" that Brown identifies is Cooper's failure to show his hands because, although they were on Sunny's head and visible to Brown, Brown wanted Cooper to raise his hands. Given that Sunny was still latched onto Cooper's calf at the time, the failure to raise his hands can hardly be characterized as "active resistance." But even if it was, any "resistance" ended quickly. Brown ordered Cooper to roll onto his stomach, and Cooper complied with that order. At that point, no reasonable officer could believe that Cooper was actively resisting arrest; to the contrary, he was actively *complying*. And yet [Officer] Brown still did not command Sunny to release the bite.

*Id*. at 523.

33

Moreover, [Officer] Brown was required to "assess not only the need for force, but also 'the relationship between the need and the amount of force used.'" [Officer] Brown subjected Cooper to a lengthy dog attack that inflicted serious injuries, even though he had no reason to believe that Cooper posed a threat, and without first attempting to negotiate. And he continued applying force even after Cooper was actively complying with his orders.

*Id.*

Officer Carranza does not challenge that "once an arrestee stops resisting, the degree of force an officer can employ is reduced," ROA.766, but that general statement of the law in the district court order provides no basis for denying judgment to Officer Carranza based on the totality of the circumstances in the case now before the Court. *See Bailey v. Ramos*, 125 F. 4th at 683 ("But none of these cases suggest that Ramos's use of force – putting his hands to Bailey's chest, pulling his shirt, and pushing him on the ground – was more force than reasonably necessary to subdue Bailey under the circumstances."). The evidence proves that Officer Carranza utilized measured, ascending and descending force that was proportional to the level of resistance Rogers presented during different points in time. ROA.472-476, 579.

Unlike *Cooper*, Rogers committed a serious crime that posed a risk or harm to officers and others, Rogers periodically actively physically resisted detention in the grass, Officer Carranza made several attempts to negotiate with Rogers, but she

did not consistently - if ever - comply with police requests or commands, Rogers was never a compliant arrestee, and Rogers was not subjected to a lengthy dog bite.

Additionally, from the perspective of a reasonable policeman on the scene, equivocal intermittent signs of possible submission to detention must be construed with some degree of initial skepticism. *See Henderson v. Harris County*, 51 F.4th 125, 135 (5th Cir. 2022) (a suspect who indicates she may surrender after initially refusing to do so cannot reasonably expect to "receive the same Fourth Amendment protection from intermediate force [s]he would have received had he promptly surrendered in the first place") (citing *Salazar*, 37 F.4th at 282-83).

And prominently, the *Cooper* panel explained,

> [t]o be clear, we do not say that *any* application of force to a compliant arrestee is *per se* unreasonable, and we do not opine on the line of reasonableness. Instead, we say only the obvious: Under the facts in this record, permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable.

*Id*. at 524.

Similarly, in *Bailey*, 125 F.4th at 683, the Court found "Bailey hasn't pointed to any case saying that officers may not use some force to subdue an arrestee in this situation." ("although Bailey was not actively resisting arrest, he had not given officers an obvious indication that he was subdued, such as kneeling with his hands in the air or lying in the fetal position.").

35

For many reasons, the *Cooper* opinion is factually and legally distinguishable from Rogers' contentions.

In *Carroll*, 800 F.3d at 161, Herman Barnes suffered from paranoid schizophrenia. Upon observing Barnes' actions, deputies performed a field investigation that ultimately resulted in a protracted physical confrontation between Barnes and deputies. The *Carroll* panel found that most of the deputies' actions were reasonable, but that deputies deployed excessive force when striking Barnes while Barnes was "unresponsive, lying "handcuffed and limp on the floor in the kitchen." *Id*. at 165, 177.

Officer Carranza agrees that such facts, if proven, would evidence a violation of the Fourth Amendment. However, the broader dicta from *Carroll* that is cited by the district court is inconsistent with *Cooper*, 844 F.3d at 524, "we do not say that *any* application of force to a compliant arrestee is *per se* unreasonable."

Nonetheless, in addition to Rogers not being subjected to any force while lying unresponsive and limp, Officer Carranza also never struck Rogers. Instead, Officer Carranza lawfully "responded with 'measured and ascending' actions that corresponded to [Rogers'] 'escalating … physical resistance." *Carroll*, 800 F.3d at 176 (quoting *Poole*, 691 F.3d at 629). Additionally, "[o]fficers may consider a suspect's refusal to comply with instructions … in assessing whether physical force is needed to effectuate the suspect's compliance." *Id*. at 175 (quoting *Deville v.*

36

*Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam)). The *Carroll* opinion does not support Rogers' contention that Officer Carranza violated the Fourth Amendment, much less clearly established law.

In *Newman*[, 703 F.3d at 760], "the defendant-officers severely beat and tased a passenger of a stopped vehicle, precipitated only by the passenger's suggestion that one of the officer's hands 'remained on [his] crotch for an uncomfortable length of time' during the pat-down search." *Bailey*, 125 F.4th at 681. "There was, moreover, no evidence that the passenger failed to comply with any lawful order before officers hit him thirteen times with a baton, tased him three times, and drug him to the sidewalk with taser barbs in his skin and his shorts around his ankles." *Id.*; *see also Salazar*, 37 F.4th at 288.

Obviously, the facts in *Newman* are not analogous to Rogers' claims. The district court's citation of *Newman* for the proposition that "[q]ualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel," is misplaced as well. In *Newman*, 703 F.3d at 763. Officer Guedry contended the law governing his use of force was not clearly established because "there was no binding caselaw on the appropriate use of tasers." Officer Carranza's contention is unlike Officer Guedry's. Officer Carranza does not claim he was entitled to use unreasonable force because the instrument was ants. Officer Carranza's contention is that he was not on notice, through controlling law,

that his specific actions in the totality of the circumstances he encountered were clearly unlawful.

The case opinions the district court cited provide no basis for denying summary judgment to Officer Carranza. The opinions do not show that Officer Carranza violated the Fourth Amendment or deprived Rogers of any clearly established constitutional right. These cases are not factually analogous to the case at bar and the legal standards attributed to the opinions are much too broad to represent any relevant clearly established standard for immunity that applies in this litigation.

**D.    Rogers failed to refute Officer Caranza's qualified immunity.**

**1.    The district court erred when it merged application of the Fourth Amendment and qualified immunity.**

Supreme Court precedent rejects merger of distinct issues of reasonableness under the Fourth Amendment and violation of clearly established law. Compare, *Hunter*, 502 U.S. at 227; *Anderson v. Creighton*, 483 U.S. 635, 638-46 (1987); *Malley v. Briggs*, 475 U.S. 335, 344. Immunity analysis is "not susceptible of fusion with" Fourth Amendment analysis. *See Saucier*, 533 U.S. at 197; Accord, *Freeman v. County of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000); *Hart v. O'Brien*, 127 F.3d 424, 444-45 (5th Cir. 1997).

"To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of the government officials, giving them 'fair leeway

for enforcing the law in the community's protection.'" *Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)); accord *Bailey*, 125 F.4th at 680. Under the Fourth Amendment's objective reasonableness standard, [i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *Saucier*, 533 U.S. at 205.

> The qualified immunity inquiry, on the other hand, has a further dimension. The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct. It is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts. If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense.

*Id.*

"The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting) (quoting *Butz v. Economou*, 438 U.S. 478, 507 (1978)).

In *Saucier, supra*, the Supreme Court considered a claim of excessive force and held "that the ruling on qualified immunity requires an analysis not susceptible of fusion with the question whether unreasonable force was used in making the arrest." "The inquiries for qualified immunity and excessive force remain distinct,

even after *Graham*." *Id*. at 204. However, the district court did not evaluate the second immunity element whether, or decide that, Officer Carranza violated clearly established federal law.

After identifying the reasons the Court denied summary judgment on the Fourth Amendment excessive force claim, the district court order states, "[f]or the same reasons, Carranza is also not entitled to qualified immunity at this stage." ROA.765-766. Therefore, the face of the district court order shows that the district court merged application of the Fourth Amendment and qualified immunity in contravention of controlling legal authorities.

> **2.** **Rogers failed to establish Officer Carranza violated clearly established constitutional law.**

Assuming *arguendo* that the district court's order does not facially demonstrate improper merger of objective reasonableness and immunity, the district court nonetheless erred in its application of clearly established constitutional law. Had Rogers identified evidence that raises a genuinely disputed question of material fact regarding whether Officer Carranza violated the Fourth Amendment, Rogers has not disproven Officer Carranza's presumed qualified immunity.

"At summary judgment, it is the plaintiff's burden to rebut a claim of qualified immunity once the defendant has properly raised it in good faith." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277(5th Cir. 2016) (quoting *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015)); accord *Solis*, 31 F. 4th at 980. "[Rogers] must clear a

40

significant hurdle to defeat qualified immunity." *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). "Once an officer pleads qualified immunity, it is the plaintiff's burden to establish that the officer violated the plaintiff's clearly established federal rights. *Id*. "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir.), *cert. denied*, 578 U.S. 907 (2016); accord *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (and the burden is heavy). Rogers has not met the standard necessary to refute Officer Carranza's presumed immunity.

"Qualified immunity protects officers from suit unless their conduct violates a clearly established right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). "Qualified immunity shields federal and state officials from money damages unless a plaintiff [identifies evidence of] facts showing (1) that the official violated a [federal] statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); accord *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc); *Benfer*, 120 F.4th at 1279.

Therefore, "[t]he qualified-immunity inquiry has two parts. First, we ask whether the facts, 'taken in the light most favorable to the party asserting the injury, … show the officer's conduct violated a federal right." *Argueta*, 86 F.4th at 1088 (quoting *Tolan*, 572 U.S. at 655-56. "And second, we ask 'whether the right in question was 'clearly established' at the time of the alleged violation, such that the

41

officer was on notice of the unlawfulness of his or her conduct." *Id*. (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc)). Rogers has not established a claim under either prong, and to support her claims, she has to satisfy both elements.

The "clearly established inquiry is demanding, especially in claims for excessive force." *Harmon*, 16 F.4th at 1167. "For a legal principle to be clearly established, '[a reviewing court] must be able to point to controlling authority-or a robust consensus of persuasive authority-that defines the contours of the right in question with a high degree of particularity,' *Morgan*, 659 F.3d at 371-72, and that places the statutory or constitutional question 'beyond debate,' *al-Kidd*, 563 U.S. at 740." *Waganfeald v. Gusman*, 674 F.3d 475, 483 (5th Cir. 2012). This portion of the analysis "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or factual setting in which it took place." *Pierce v. Smith*, 117 F.3d 866, 882 n. 5 (5th Cir. 1997). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id*. at 8 (quoting *Mullenix*, 577 U.S. at 11 (internal quotation marks omitted)).

"Although the Supreme 'Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id*. (quoting *White*, 580 U.S. at

42

79). "This inquiry 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Id*. (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (internal quotation marks omitted)). "[S]pecificity is especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id*. (quoting *Mullenix*, 577 U.S. at 12, (alterations and internal quotation marks omitted)). The record establishes that Officer Carranza had no forewarning that what he was doing trying to manage Rogers', at a minimum periodic active resistance, was clearly unlawful.

The general Fourth Amendment standard enumerated in *Graham* is cast "at a high level of generality." *Id*. (quoting *Brosseau*, 543 U.S. at 199). The Supreme Court has never identified any police use of force case wherein the force used was so obviously excessive that preexisting precedent other than *Graham* was unnecessary to determine an officer had violated clearly established law. *Harmon*, 16 F.4th at 1167. Absent such a case, "to show a violation of clearly established law, [Rogers] must identify a case that put [Officer Carranza] on notice that [his] conduct was unlawful." *See Rivas-Villegas v. Cortesluna,* 595 U.S. 1, 6 (2021).

In *Rivas-Villegas*, the Supreme Court assumed without deciding that circuit court precedent could be a source of clearly established constitutional law, and found that, the facts in the circuit cases cited are "materially distinguishable and those do[]

43

not govern the facts of" the *Rivas-Villegas* case. *See id.* "Precedent involving similar facts can help move a case beyond the otherwise hazy borders between excessive and acceptable force and thereby provide an officer notice that a specific use of force is unlawful." *Id.* at 9 (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (*per curiam*) (internal quotation marks omitted)).

Similarly, in *City of Tahlequah v. Bond*, 595 U.S. 9 (2021) (*per curiam*), the Supreme Court found that police officers did not violate clearly established law. "We have repeatedly told courts not to define clearly established law at too high a level of generality." *Id.* at 12 (citing *al-Kidd*, 563 U.S. at 742. "It is not enough that a rule be suggested by then-existing Precedent; the 'rules' contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Saucier*, 533 U.S. at 202). In *Bond*, "[t]he Tenth Circuit contravened those settled principles here." *Id.* at 12. "Not one of the decisions relied upon by the Court of Appeals [] comes close to establishing that the officers' conduct was unlawful." *Id.* The Supreme Court distinguished *the facts* of the circuit court opinions from those in *Bond* and discussed that the general rules in other circuit cases fail to show "the officers' particular conduct here violated the Fourth Amendment." *See id.*

"In determining what constitutes clearly established law, [the Fifth Circuit] court first looks to Supreme Court precedent and then to [Fifth Circuit precedent]."

44

*Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018). "If there is no directly controlling authority, this court may rely on decisions from other circuits to the extent that they constitute "a robust 'consensus of cases of persuasive authority.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742 (quoting *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *Wesby*, 583 U.S. at 63.

> It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule [Rogers] seeks to apply.

*Id.* (emphasis added).

"A defendant does not violate 'a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Rogers v. Hall*, 46 F.4th 308, 312 (5th Cir. 2022) (quoting *Plumhoff*, 572 U.S. at 778–79. "The precedent must also be at 'a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitely unlawful." *Solis*, 31 F.4th at 984 (quoting *Vincent*, 805 F.3d at 547). "This means that 'existing precedent … placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "In other words, the plaintiff must 'point to controlling authority—or a robust consensus of persuasive authority—that defines the contours

of the right in question with a high degree of particularity.'" *Id*. at 312-13 (quoting

*Morgan*, 659 F.3d at 371–72 (citations and internal quotations omitted).

"Police officers can be expected to have a modicum of knowledge regarding

the fundamental rights of citizens." *Saldana v. Garza*, 684 F.2d 1159, 1164-65 (5th

Cir. 1982). "However, in holding our law enforcement personnel to an objective

standard of behavior, [] judgment must be tempered with reason." *Id*. "Certainly [a

court] cannot expect our police officers to [possess] a legal scholar's expertise in

constitutional law." *Id*. "If reasonable public officials could differ on the lawfulness

of the defendant's actions, the defendant is entitled to qualified immunity."

*Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990).

> Foundational to our qualified immunity doctrine is the concept that we must view an officer's actions from that officer's point of view without the benefit of hindsight. From the comfort of a courtroom or chambers, it is often possible for judges to muse on how an officer could have handled a situation better. But that does not mean the officer is not entitled to qualified immunity.

*Solis*, 31 F.4th at 978.

Contrary to governing precedent, the district court did not perform any

analysis of the clearly established law prong of immunity and identified no clearly

established constitutional right Officer Carranza violated. *See Orr*, 844 F.3d at 490-

91. And Rogers has not established the legality of her action was clearly established.

*See Sorenson v. Ferrie*, 134 F.3d 325, 330 (5th Cir. 1998).

Lastly, this case is far from an "obvious" case exception. The only obvious

46

thing about this case is that the totality of the facts and circumstances are extremely unique, and require the Court to "slosh [its] way through the factbound morass of 'reasonableness.'" *See Scott*, 550 U.S. at 383. Even at this stage of the litigation, Rogers still cannot even make a legitimate effort to identify any body of clearly established law that Officer Carranza violated. Officer Carranza could not reasonably have been expected, during the split-seconds he had to react to Rogers' active resistance, to identify any law that clearly prohibited Officer Carranza' actions. Rogers has not demonstrated that in "a blink of an eye," every reasonable officer would have immediately known that Officer Carranza's actions were clearly forbidden under well-established Fourth Amendment rights. *See Henderson*, 51 F.4th at 133; and *Morrow*, 37 F.3d at 875. Rogers has not refuted Officer Carranza's immunity under the governing legal standards. *See Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (Per Curiam); *Lincoln v. Turner*, 874 F.3d 833, 848-50 (5th Cir. 2017).

Regardless of the characterization of Officer Carranza's conduct, no identifiable legal authority provided fair notice to Officer Carranza, or any other reasonable officer, that Officer Carranza's conduct was clearly unlawful, beyond debate. "When a defendant asserts and is entitled to [qualified immunity], a court has two options: It can decide that the plaintiff's constitutional claims lack merit, or it can decide that the defendant's conduct did not violate clearly established law."

47

*Smith v. Heap,* 31 F.4th 905, 911 (5th Cir. 2022).

## CONCLUSION

For these reasons, the Court should reverse the district court's order denying summary judgment in favor of Officer Carranza, and render judgment in favor of Officer Carranza, or alternatively remand the case to the district court with directions to perform the analysis and enter a judgment in accordance with the controlling authorities cited herein.

SUBMITTED BY:

<u>S/William S. Helfand</u>
Norman Ray Giles
Lewis, Brisbois, Bisgaard & Smith, L.L.P.
24 Greenway Plaza
Weslayan Tower
Houston, TX 77046

## CERTIFICATE OF SERVICE

I certify that on September 17, 2025, the foregoing document was forwarded via electronic mail and through the Court's electronic filing system on today's date to the following counsel for Appellant:

Randall Kallinen
of Kallinen Law, P.L.L.C. Houston, TX

Elizabeth Rice
of Spalding Nichols Lamp Langlois Houston, TX

Charles Rush
of Spalding Nichols Lamp Langlois Houston, TX

S/William S. Helfand

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 11,492 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman, 14 point.

S/William S. Helfand

## CERTIFICATE OF ELECTRONIC COMPLIANCE

Counsel also certifies that on September 17, 2025, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, through the court's CM/ECF document filing system, https://ecf.ca5.uscourts.gov/. Counsel further certifies that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of Sophos and is free of viruses.

S/William S. Helfand

49