**Case No. 25-40367**

---

**In the United States Court of Appeals
for the Fifth Circuit**

---

**TAYLOR ROSE ROGERS,**
*Plaintiff – Appellee*

**v.**

**RUBEN ESPINOZA; CHRISTIAN CARRANZA,**
*Defendants – Appellants.*

---

**On Appeal from the United States District Court for the Southern District of
Texas, Galveston Division, Civil Action No. 3:24-cv-38**
Honorable Jeffrey V. Brown, District Court Judge, Presiding

---

**BRIEF FOR APPELLANT RUBEN ESPINOZA**

---

**SPALDING NICHOLS LAMP LANGLOIS**
Charles Cory Rush
State Bar No. 24074989
crush@snll-law.com
Elizabeth Mylin Rice
State Bar No. 24107874
lrice@snll-law.com
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone: (713) 993-7066
Facsimile: (888) 726-8374

*Attorneys for Defendant-Appellant Ruben
Espinoza*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

| **Defendant-Appellants** | **Counsel for Defendant-Appellants** |
|---|---|
| **Ruben Espinoza** | Charles Cory Rush<br>Elizabeth Mylin Rice<br>SPALDING NICHOLS LAMP LANGLOIS<br>3700 Buffalo Speedway, Suite 500<br>Houston, Texas 77098<br>Telephone: (713) 993-7060 |
| **Christian Carranza** | William S. Helfand<br>Norman Ray Giles<br>LEWIS, BRISBOIS, BISGAARD &<br>SMITH, LLP<br>24 Greenway Plaza, Suite 1400<br>Houston, Texas 77046<br>Telephone: (832) 460-4614 |

| **Plaintiff-Appellee** | **Counsel for Plaintiff-Appellee** |
|---|---|
| **Taylor Rogers** | Randall Kallinen<br>Alexander Johnson<br>KALLINEN LAW, PLLC<br>511 BROADWAY STREET<br>Houston, Texas 77102<br>Telephone: (713) 320-3785 |

/s/ Charles Cory Rush
Charles Cory Rush
*Attorney for Defendant-Appellant Ruben Espinoza*

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Ruben Espinoza requests the opportunity to present an oral argument because this appeal addresses important issues regarding proper application of qualified immunity in cases under Supreme Court and this Court's precedent. Espinoza believes that oral argument will aid the Court in addressing these important issues.

**TABLE OF CONTENTS**

**CERTIFICATE OF INTERESTED PERSONS**............................................... ii

**STATEMENT REGARDING ORAL ARGUMENT**....................................... iii

**TABLE OF CONTENTS** ....................................................................iv

**TABLE OF AUTHORITIES** ...............................................................vi

**JURISDICTIONAL STATEMENT**.........................................................1

    *A. Jurisdiction of the district court* .................................................1

    *B. Basis for jurisdiction of the court of appeals*...............................1

    *C. Filing dates* ..........................................................................1

    *D. Appealability of order* ............................................................2

**STATEMENT OF THE ISSUES**............................................................2

**STATEMENT OF THE CASE**...............................................................3

    *A. Relevant factual background* ...................................................3

    *B. Relevant procedural history* ..................................................11

**SUMMARY OF THE ARGUMENT** .....................................................15

**ARGUMENT AND AUTHORITIES**......................................................17

    *A. Standard of review* ...............................................................17

    *B. The district court erred in denying Espinoza qualified immunity on Rogers' bystander liability claim and the previously abandoned excessive force Claim*………..................................................................18

        *1.* The qualified immunity analysis .........................................18

2. *Espinoza is entitled to qualified immunity from Rogers' bystander liability claim........* ......................................................................................................19

    a. The district court did not analyze whether Espinoza's alleged inaction violated Rogers' clearly established constitutional rights...............................................................................................19

        i. *The evidence that Espinoza did not simply acquiesce is unaddressed and undisputed*......................................................19

        ii. *The district court's failure to assess the clearly established law regarding Espinoza's purported failure to intervene is dispositive*..................................................................................23

**C. The district court erred in denying Espinoza qualified immunity on Rogers' abandoned excessive force claim** ................................................................25

**PRAYER**........................................................................................................34

**CERTIFICATE OF SERVICE** ..................................................................35

**CERTIFICATE OF COMPLIANCE** ........................................................36

**CERTIFICATE OF ELECTRONIC COMPLIANCE** ..............................36

v

# TABLE OF AUTHORITIES

## Cases

*Bennett v. City of Grand Prairie,*
    883 F.2d 400 (5th Cir. 1989) ...............................................................................19

*Benningfield v. City of Houston,*
    157 F.3d 369 (5th Cir. 1998) ...............................................................................17

*Bye v. MGM Resorts Int'l, Inc.,*
    49 F.4th 918 (5th Cir. 2022). ...............................................................................31

*Cantrell v. City of Murphy,*
    666 F.3d 911 (5th Cir. 2012) ...............................................................................17

*Carnaby v. City of Houston,*
    636 F.3d 183 (5th Cir. 2011) ...............................................................................23

*Cloud v. Stone,*
    993 F.3d 379 (5th Cir. 2021). ...............................................................................33

*Curran v. Aleshire,*
    800 F.3d 656 (5th Cir. 2015) ...............................................................................17

*Cutrera v. Bd. of Supervisors,*
    429 F.3d 108 (5th Cir. 2005). ...............................................................................31

*Davis v. Scherer,*
    468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) ................................18

*District of Columbia v. Wesby,*
    583 U.S. 48, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) ......................18, 19, 24

*Doss v. Helpenstell,*
    626 F. App'x 453 (5th Cir. 2015)..........................................................................24

*Edward B. Marks Music Corp. v. Continental Record Co.,*
    222 F.2d 488 (2d Cir.1955). ...............................................................................26

*Fisher v. Metropolitan Life Ins. Co.,*
    895 F.2d 1073 (5th Cir. 1990). ......................................................31

*Garcia v. Blevins,*
    957 F.3d 596 (5th Cir. 2020). .......................................................33

*Gates v. Tex. Dep't of Protective and Regulatory Servs.,*
    537 F.3d 404 (5th Cir. 2008)........................................................19

*Hale v. Towley,*
    45 F.3d 914 (5th Cir. 1995) .....................................................20, 21

*Hargrave v. Fibreboard Corp.,*
    710 F.2d 1154 (5th Cir.1983). .....................................................26

*Harlow v. Fitzgerald,*
    457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ................................18

*Hunter v. Bryant,*
    502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ..................................1

*Johnson v. Jones,*
    515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) ...............................11

*Joseph ex rel. Est. of Joseph v. Bartlett,*
    981 F.3d 319 (5th Cir. 2020) ........................................ 20, 21, 24, 25, 32, 33

*Mason v. Faul,*
    929 F.3d 762 (5th Cir. 2019). .......................................................33

*McClelland v. Katy Indep. Sch. Dist.,*
    63 F.4th 996 (5th Cir. 2023).........................................................25

*McDonald v. McClelland,*
    779 F. App'x 222 (5th Cir. 2019)...................................................32

*Morgan v. Swanson,*
    659 F.3d 359 (5th Cir. 2011)........................................................18

*Newman v. Guedre*,
    703 F.3d 757 (5th Cir. 2000) ........................................................................24

*Pearson v. Callahan*,
    555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ................................19

*Phillips v. Whittington,*
    No. 20-30731, 2022 WL 797418 (5th Cir. Mar. 14, 2022) ..........................21

*Plumhoff v. Rickard*,
    572 U.S. 765, 134 S.Ct. 2012, 188 L.Ed.2d 1056 (1986) ..........................1, 2

*Ramirez v. Martinez*,
    716 F.3d 369 (5th Cir. 2013) ........................................................................24

*Reichle v. Howards,*
    566 U.S. 658, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) ..............................19

*Rich v. Palko*,
    920 F.3d 288 (5th Cir. 2019) ....................................................................17, 18

*Saucier v. Katz,*
    533 U.S. 194, 121 S.Ct. 2141, 150 L.Ed.2d 272 (2001) ..............................24

*Scott v. Harris*,
    550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) ........................17, 18

*Timpa v. Dillard*,
    20 F.4th 1020 (5th Cir 2021). ..........................................................19, 20, 21

*Tucker v. City of Shreveport,*
    998 F.3d 165 (5th Cir. 2021). ......................................................................33

*Wagner v. Bay City*,
    227 F.3d 316 (5th Cir. 2000) ......................................................................17

*Westfall v. Luna*
    903 F.3d 534 (5th Cir. 2018) ......................................................................21

*Whitley v. Hanna,*
    726 F.3d 631 (5th Cir. 2013) .........................................................................20

## Statutes

28 U.S.C. § 1292 ......................................................................................................1

28 U.S.C. § 1331 ......................................................................................................1

28 U.S.C. § 1343 ......................................................................................................1

42 U.S.C. § 1983 ......................................................................................................1

## Rules

Federal Rule of Civil Procedure 56(a) ..............................................................19, 20

# JURISDICTIONAL STATEMENT

## A.    *Jurisdiction of the district court*

Appellee Taylor Rose Rogers brought claims against Appellant Ruben Espinoza under 42 U.S.C. § 1983, giving the district court subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

## B.    *Basis for jurisdiction of the court of appeals*

This appeal comes from the district court's June 4, 2025, order denying Defendants-Appellants' Motions for Summary Judgment on qualified immunity. Thus, this Court has jurisdiction over this Appeal under 28 U.S.C. § 1292, which provides jurisdiction over interlocutory appeals. This appeal is based upon a pretrial order rejecting a claim of qualified immunity and is immediately appealable. *Plumhoff v. Rickard,* 572 U.S. 765, 765, 134 S. Ct. 2012, 2019 (2014) (citing *Johnson v. Jones*, 515 U.S. 304, 314, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995)).

## C.    *Filing dates*

The Honorable Jeffrey V. Brown signed the order denying Defendants-Appellants' Motions for Summary Judgment on June 4, 2025. Defendants-Appellants filed their Notices of Appeal with the United States District Court for the Southern District of Texas on June 18, 2025.

1

*D.*    *Appealability of order*

This appeal arises from the district court's order denying Defendant-Appellant Ruben Espinoza's Motion for Summary Judgment on Qualified Immunity and is, therefore, immediately appealable. *Plumhoff*, 134 S. Ct. at 2019.

## STATEMENT OF THE ISSUES

1. Whether the district court erred in denying Ruben Espinoza's Motion for Summary Judgment regarding Taylor Rogers' bystander liability claim based on qualified immunity where the district court premised the denial exclusively on whether Appellant Christian Carranza engaged in excessive force;

2. Whether the district court erred in denying Ruben Espinoza's Motion for Summary Judgment regarding Taylor Rogers' bystander liability claim based on qualified immunity where the district court failed to analyze whether Espinoza's alleged inactions violated clearly established law;

3. Whether the district court erred in denying Espinoza qualified immunity on summary judgment regarding Rogers' previously abandoned excessive force claim; and

4. Whether the district court erred in denying Ruben Espinoza's Motion for Summary Judgment regarding Taylor Rogers' previously abandoned excessive force claim where the district court did not analyze whether Espinoza's alleged actions violated clearly established law.

## STATEMENT OF THE CASE

### A.    *Relevant factual background*

On August 19, 2021, Appellant Ruben Espinoza, who at the time was a Sergeant for the Santa Fe Independent School District (SFISD) Police Department, was assigned to monitor traffic in front of Roy J. Wollam Elementary School during morning drop off. ROA.25-40367.400. Part of this assignment required officers like Espinoza to prevent traffic from making illegal left-hand turns into the school parking lot during student drop off. ROA.400. Signs were posted in the vicinity advising drivers that left-hand turns were not permissible from 7:30 a.m. through 9:30 a.m. ROA.400, 404 (at 8:24:14).

Before school started that morning, Appellee Taylor Rose Rogers had interactions with Espinoza and SFISD Police Officer Elizabeth "Cibby" Moore that eventually led to her arrest for the felony crime of evading arrest or dentition by a motor vehicle. ROA.516-523, 556-580. Both Espinoza and Officer Moore engaged body-worn cameras. ROA.404-405. The salient events from the officers' body-worn cameras, taken on the morning of August 19, 2021, are summarized with timestamp references and supplemental record references as follows:

- ROA.404 at 8:21:00: Rogers is in her vehicle with her son at the front of Roy J. Wollam Elementary School (Wollman Elementary School) during morning drop-off. Espinoza is on foot and speaking

3

with Rogers regarding her attempt to enter the Wollam Elementary School drop-off from a prohibited direction.

- ROA.404 at 8:21:07: Espinoza says to Rogers, "There is no left turns, ma'am, on this road. There are signs posted." Rogers responds, "I am going to go to the walkup this way." Espinoza replies, "No you can't—you can't do that."

- ROA.404 at 8:21:15: Rogers asks Espinoza, "What do you want me to do?" Espinoza explains to Rogers how to correctly enter the school drop-off area.

- ROA.404 at 8:21:53: Espinoza explains to Rogers, "So, if you need to drop off, though, you can get to the back by taking a left up that next right, and then taking another left, basically you are making a complete circle. . ."

- Before Espinoza could finish his instructions, Rogers drove away in her vehicle. ROA.400.

- Rogers thereafter makes an improper right-hand turn into the exit of the employee parking area, effectively traveling north in a south-bound lane. ROA.410. The posted speed limit is 20 mph, and Rogers appeared to be traveling at a rate of speed faster than the posted speed limit. ROA.410.

- <u>ROA.405 at 8:24:14</u>: The sign posted, as depicted from Officer Moore's video, reads, "DO NOT ENTER. STAFF & BUS ONLY[.]"



- <u>ROA.405 at 8:23:22</u>: While on foot, Officer Moore, yells while waiving both hands in the air at Rogers in her vehicle: "Hey, hey, hey!"

- <u>ROA.405 at 8:23:29</u>: Other students are seen walking in the parking lot to enter the school building where Rogers is erratically driving.

- <u>ROA.405 at 8:23:44</u>: Officer Moore approaches Rogers' car on foot and says, "Hold up, hold up." Officer Moore repeatedly directs Rogers to stop her vehicle.

- <u>ROA.405 at 8:23:49</u>: Rogers ignores Officer Moore's directives and flees in her vehicle.

- <u>ROA.405 at 8:23:52</u>: While fleeing, Rogers opens her car door and releases her dog from her vehicle. The dog approaches Officer Moore.

- <u>ROA.405 at 8:24:00</u>: Rogers exits the school parking lot, turns left, and speeds away from Officer Moore.

- <u>ROA.405 at 8:24:24</u>: Officer Moore gets in her marked police vehicle and radios, "Ok, I've got a mom,  uh—she's evading me." Officer Moore continues to describe Rogers' vehicle and the direction Rogers is heading.

- Upon hearing Officer Moore's radio call, Espinoza immediately recalled this was the same individual he had just spoken to regarding the illegal left-hand turn. ROA.400-401. Espinoza observes Rogers approach the intersection of Walker Street and Avenue S, where the vehicle in front of her was stopped at the stop sign. ROA.410. Rogers then illegally and erratically passed the stopped vehicle on the right, in the grass, and continued fleeing. ROA.410.

- Espinoza exits his patrol unit to approach Rogers' vehicle. ROA.410. Rogers, while still in a school zone, puts her vehicle in reverse and travels backward at a high rate of speed. ROA.410.

- ROA.405 at 8:24:39: While in her patrol unit, Officer Moore, approaches Rogers' vehicle and Rogers, while in reverse, attempts to hit Officer Moore's patrol unit. Rogers attempted to reverse into the Wollam Elementary School bus driveway a second time. *See* Ex. 1 ¶ 7.

- ROA.404 at 8:24:51: Espinoza uses his vehicle to stop Rogers from fleeing.

- ROA.405 at 8:25:06: Espinoza directs Rogers to get out of her vehicle.

- ROA.405 at 8:25:12: Officer Moore repeatedly directs Rogers to get out of her vehicle.

- ROA.404 at 8:25:20: Rogers opens her car door and Rogers screams, "Ya'll are scaring me!"

- ROA.404 at 8:25:21: Espinoza directs her to get onto the ground.

- ROA.404 at 8:25:26: Espinoza places Rogers on the ground.

- ROA.404 at 8:25:40: Espinoza holds Rogers hands behind her back, and Officer Moore places handcuffs on Rogers.

7

- <u>ROA.404 at 8:25:50</u>: Rogers is handcuffed and face-forward on the ground. Officer Moore is holding Rogers' hands behind her back. Espinoza stands up and is no longer on the ground with Rogers.

- <u>ROA.404 at 8:25:52</u>: Espinoza radios, "She's secure."

- <u>ROA.404 at 8:25:57</u>: Rogers' child can be heard crying in the car.

- <u>ROA.404 at 8:25:58</u>: Espinoza approaches the car and says to the child, "It's ok buddy, it's ok."

- <u>ROA.404 at 8:26:04</u>: Officer Carranza from the City of Santa Fe Police Department takes over and radios, "We have one detained."

- <u>ROA.404 at 8:26:06</u>: Officer Moore stands up and is no longer on the ground with Rogers.

- <u>ROA.405 at 8:26:07</u>: Officer Moore radios for someone from Wollam Elementary School to come outside to take Rogers' child into school for the day.

- <u>ROA.404 at 8:26:11</u>: Officer Carranza is holding Rogers' hands while she is handcuffed on the ground.

- <u>ROA.405 at 8:26:12</u>: Rogers continues to yell.

- <u>ROA.404 at 8:26:15</u>: Espinoza approaches the car again and says to child, "It's ok buddy. She is just upset, ok.  We are going to work it out, alright?"

- <u>ROA.404 at 8:26:36</u>: Rogers is face down on the ground in handcuffs. Officer Carranza is holding her hands behind her back. Rogers continues to ramble about letting her son go to school.

- <u>ROA.404 at 8:26:40</u>: Rogers screams, "What did I do? Can you tell me what I did?"

- <u>ROA.404 at 8:26:44</u>: Espinoza responds to Rogers, "You fled from a police officer."

- <u>ROA.404 at 8:26:46</u>: Rogers says, "Please tell me what I did, you're hurting my arms."

- <u>ROA.404 at 8:26:48</u>: Officer Carranza says, "Then stop moving then. I'll stop when you stop." Rogers continues yelling.

- <u>ROA.404 at 8:27:08</u>: Espinoza says to Rogers, "Ma'am, your son is in the car, so remain calm, ok? . . . we need to get your son in class."

- <u>ROA.404 at 8:27:21</u>: Rogers says, "No shit, I tried to get him here early so he could eat breakfast." Rogers continues flailing her body.

- <u>ROA.405 at 8:27:23</u>: Officer Moore helps to secure Rogers left leg on the ground. Another unnamed male officer attempts to secure Rogers' left leg on the ground by holding her ankle. Officer Moore secures Rogers' right leg on the ground by holding her ankle.

9

- <u>ROA.405 at 8:27:26</u>: Rogers flails her right leg in the air. An unnamed male officer attempts to secure Rogers' right leg while holding Rogers' ankle.

- <u>ROA.404 at 8:27:25</u>: Officer Carranza repeats to Rogers, "Stop. I'll stop when you stop."

- <u>ROA.404 at 8:27:50</u>:  Rogers, for the first time, states, "Ants are on my face. Ants are getting my face."

- <u>ROA.404 at 8:28:00</u>: Rogers continues saying, "Ants are on my face, please let go."

- <u>ROA.405 at 8:28:03</u>: One of the two officers on the ground with Rogers says, "Calm down so we can get you up."

- <u>ROA.404 at 8:28:03</u>: Espinoza asks the officers, "You want to secure her in the back of your car? Can—do—you have a cage in one of your cars?"

- <u>ROA.405 at 8:28:07</u>: An unnamed male officer begins lifting Rogers off the ground.  Rogers flails back toward the ground.

- <u>ROA.404 at 8:28:10</u>: An unnamed male officer says to Rogers, "We are trying to get you up, calm down."

- <u>ROA.404 at 8:28:21</u>: Officer Carranza and another unnamed male officer assist Rogers off the ground.

10

- <u>ROA.404 at 8:28:32</u>: An unnamed male officer says, "I've got some water we can pour on her face and get those ants off."

- <u>ROA.404 at 8:28:46</u>: Espinoza brings Rogers her shoes and asks, "Do you want to wear your shoes?"

- <u>ROA.404 at 8:28:55</u>: Rogers answers: "Yes," and Espinoza places Rogers' Nike slide sandals on the ground for her to slip on her feet.

- <u>ROA.405 at 8:29:33</u>: Officer Moore approaches Rogers' vehicle and asks Rogers' son, "What grade are you in, sweetie?" and asks, "who's your teacher."

- <u>ROA.405 at 8:29:50</u>: Officer Moore says to Rogers, "Alright, I am releasing your child to the school, are you good with that?" Rogers answers: "Yes…"

Rogers was thereafter transported by the City of Santa Fe and booked. ROA.411. The District Attorney's Office accepted the charge of evading arrest with a motor vehicle. ROA.411. In her deposition, Rogers did not dispute that she was resistant and combative throughout the entire altercation, including when she was handcuffed on the ground. ROA.427-428.

**B.    *Relevant procedural history***

Rogers filed her Original Complaint on July 27, 2023, bringing claims under 42 U.S.C. § 1983 against the City of Santa Fe, Officer Christian Carranza, and

Espinoza for excessive force, bystander liability, cruel and unusual punishment, and deprivation of substantive due process. ROA.13-38.

Espinoza answered the Original Complaint on September 15, 2023, and therein requested that Rogers reply to Espinoza's assertion of qualified immunity under Federal Rule of Civil Procedure 7. ROA.107-117. Specifically, Espinoza asserted that because he was not an officer in the City of Santa Fe Police Department, the allegations lodged at that entity, even though collectively lodged against all "Defendants" in the pleading, were necessarily unrelated to Espinoza. ROA.116-117. Indeed, the only allegation in the live complaint directed at Espinoza was that he "rammed" Rogers' vehicle with his car to get her to stop fleeing, but she alleged no harm arising from that vehicular contact. ROA.116-117.

On January 5, 2024, Rogers filed her First Amended Complaint, which included her reply under Rule 7(b). ROA.158-194. Rogers, in her Rule 7 reply, explicitly abandoned all claims against Espinoza except for bystander liability under Section 1983:

## XIII. RULE 7 REPLY

97. Attorneys for Defendant Espinoza claim that he is entitled to qualified immunity because his only action on the date of the incident was "ramming Plaintiff's car to stop her erratic and evasive driving." In the amended complaint above, Plaintiff explains that Espinoza was liable for the injuries to Plaintiff through bystander liability and because he failed to render aid to Plaintiff. Espinoza stood by for three minutes as Carranza held Plaintiff down in an ant pile face first. His inactions give rise to the 1983 claims against him. No law enforcement personnel is entitled to qualified immunity for standing by as a citizen is being assaulted by a peace officer when there is no constitutionally valid reason for the force being used by the officer. As a "Chief", Espinoza should be aware of police training as it relates to force and as it relates to inaction by officers when one officer is doing the wrong thing. Espinoza could have told Carranza to quit holding Plaintiff face down in an ant pile. Espinoza could have told Carranza he was violating policy with his hold of Plaintiff. Espinoza could have rendered aid to Plaintiff. Espinoza did none of those things. Therefore, he is also liable under 1983 for the injuries sustained by Plaintiff as he violated her clearly-established right to remain free from excessive force in that he allowed another officer to effectuate the force on Plaintiff and because he failed to render any aid to Plaintiff afterwards. Their claim of qualified immunity should be denied by this honorable court.

ROA.184.

On January 19, 2024, Espinoza moved to dismiss Rogers' First Amended Complaint pursuant to Rule 12(b)(6) and asserted qualified immunity. ROA.199-207. In response, Rogers reiterated that her complaint "focuses on the conduct of the police after her detention and the excessive force used by Carranza and *the bystander liability of Espinoza* as well as Monell liability on the City of Santa Fe." ROA.270.

13

(emphasis added). Rogers also explained, much like the Rule 7 reply, that her claims against Espinoza were "for his inactions, not his actions," and that "Espinoza believes this Court should grant his motion because he didn't do anything. That is precisely the point." ROA.281. Stated differently, Rogers made it clear that she was abandoning all claims against Espinoza except for bystander liability. ROA.270, 281.

The district court ruled on the parties' respective Rule 12(b)(6) motions on March 14, 2024. ROA.308-324. In the order, the district court analyzed the remaining claims in Rogers' First Amended Complaint as an excessive force claim against Carranza and a bystander liability claim against Espinoza. ROA.316, 319. The district court allowed those two claims to proceed beyond the co-defendants' respective Rule 12(b)(6) challenges. ROA.323.

Espinoza filed his Motion for Summary Judgment asserting qualified immunity on Rogers' remaining bystander liability claim on December 26, 2024. ROA.373-397. Rogers, in response, alleged that Espinoza "did not move for summary judgment as to the excessive force claims against him," despite her clear abandonment of any excessive force claim against Espinoza at the onset of the litigation. ROA.588. As a result of Rogers' attempted resuscitation of her excessive force claim against Espinoza, Espinoza raised the issue of Rogers' abandonment of such claim in his Reply and, alternatively, asserted qualified immunity regarding

14

Rogers' inappropriate attempt to ambush Espinoza with this claim in her response to Espinoza's Motion for Summary Judgment. ROA.638-648.

The district court denied Espinoza's Motion for Summary Judgment on June 4, 2025. ROA.765-767. As to the bystander liability claim, the district court concluded, in one sentence of analysis with reference to the analysis of Rogers' excessive force claim against Carranza, "Because genuine disputes remain as to whether Rogers' constitutional rights were violated, as explained above, Espinoza is not entitled to summary judgment." ROA.766. Then, the district court denied Espinoza summary judgment on Rogers' previously abandoned excessive force claim, reasoning that "[a]rguments raised for the first time in a reply brief are generally waived." ROA.766-767 (alteration in original). Espinoza timely appealed this order on June 18, 2025. ROA.774.

## SUMMARY OF THE ARGUMENT

The district court erred when it denied Espinoza's Motion for Summary Judgment asserting qualified immunity. Rogers drove erratically around the premises of an elementary school and evaded police officers who attempted to stop her from potentially causing harm to herself or others. Rogers was placed in a grassy area and handcuffed while officers from the City of Santa Fe Police Department arrived on the scene and attempted to subdue her. No one saw or otherwise knew that ants were in Rogers' vicinity, and when she alerted officers that ants were on

15

her person, she was assisted to her feet a mere 17 seconds later.

Rogers claims that Espinoza had a constitutional duty to intervene in Officer Carranza's allegedly excessive use of force and failed to do so. The district court, in one sentence, without analyzing the elements of a bystander liability claim at all, and without assessing any applicable caselaw demonstrating that Espinoza violated clearly established law agreed with Rogers. The district court's denial of Espinoza's assertion of qualified immunity through his Motion for Summary Judgment, instead, was exclusively premised on the finding that "genuine issues" regarding Carranza's allegedly excessive force precluded Espinoza's summary judgment as well. The district court's failure to properly analyze the bystander liability claim against Espinoza was clearly in error, and the denial of Espinoza's Motion for Summary Judgment on this point merits reversal.

Moreover, Rogers expressly abandoned the excessive force claim against Espinoza in her First Amended Complaint and in her responses to the parties' respective Rule 12(b)(6) motions early in the case, yet the district court allowed her to revive the claim in her Response to Espinoza's Motion for Summary Judgment and denied Espinoza qualified immunity on a nonexistent claim. The district court did so without regard to precedent regarding the impact of a party's abandonment of claims through amendment and dispositive motion practice and without holding Rogers to her burden of establishing that Espinoza's alleged use of force violated

16

her clearly established constitutional rights. The district court should have ruled that Espinoza was entitled to qualified immunity from Rogers' abandoned excessive force claim, and the district court's order denying Espinoza's Motion for Summary Judgment should be reversed.

## ARGUMENT AND AUTHORITIES

### A.  *Standard of review*

A district court's denial of a motion for summary judgment based on qualified immunity is reviewed *de novo* on appeal. *See Benningfield v. City of Houston*, 157 F.3d 369, 374 (5th Cir. 1998). This Court has jurisdiction to decide whether the district court erred in concluding as a matter of law that officials were not entitled to qualified immunity on a given set of facts. *See Rich v. Palko*, 920 F.3d 288, 293 (5th Cir. 2019) (quoting *Cantrell v. City of Murphy*, 666 F.3d 911, 921 (5th Cir. 2012)). Ordinarily, the Court's *de novo* review is limited to the *materiality* of the factual disputes but not the *genuineness* of such disputes, and factual disputes are viewed in the light most favorable to the nonmoving party. *Id.* (quoting *Curran v. Aleshire*, 800 F.3d 656, 660 (5th Cir. 2015) (quoting *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000))) (emphasis in original). When, however, the nonmoving party's version of events is "blatantly contradicted" and "utterly discredited" by video recordings, the Court is not required to accept the nonmoving party's version of the facts. *Id.* at 293 n.3 (quoting *Curran*, 800 F.3d at 664 (quoting *Scott v. Harris*, 550

17

U.S. 372, 380-81, 127 S.Ct. 1769, 167 L.Ed. 686 (2007))).

**B.    *The district court erred in denying Espinoza qualified immunity on Rogers' bystander liability claim and the previously abandoned excessive force claim.***

*1.  The qualified immunity analysis*

As a general matter, qualified immunity is a defense that exists to shield governmental officials from liability "when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370-71 (5th Cir. 2011). The defense is available to government officials who perform discretionary functions "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The standard serves to protect constitutional rights, while allowing government officials to effectively perform their duties. *Davis v. Scherer*, 468 U.S. 183, 195, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The qualified immunity standard gives ample room for mistaken judgments by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).

"Once an officer invokes the [qualified immunity] defense, the plaintiff must rebut it by establishing (1) that the officer violated a federal statutory or constitutional right and (2) that the unlawfulness of the conduct was 'clearly established at the time.'" *Rich*, 920 F.3d at 294 (quoting *District of Columbia v.*

18

*Wesby*, 583 U.S. 48, 62-63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012))). An official's conduct is objectively reasonable "unless *all* reasonable Officials in the Defendant's circumstances would have then known that the conduct violated the Constitution." *Gates v. Tex. Dep't of Protective & Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008) (emphasis added). The Court may consider the two prongs of the qualified immunity analysis in either order. *Pearson v. Callahan*, 555 U.S. 223, 242, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Importantly, Rogers has the burden of overcoming Espinoza's qualified immunity defense. *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 408 (5th Cir. 1989).

> 2. *Espinoza is entitled to qualified immunity from Rogers' bystander liability claim.*

>> a. <u>The district court did not analyze whether Espinoza's alleged inaction violated Rogers' clearly established constitutional rights.</u>

>>> i. *The evidence that Espinoza did not simply acquiesce is unaddressed and undisputed.*

The district court denied Espinoza's Motion for Summary Judgment asserting qualified immunity regarding Rogers' bystander liability claim without undertaking the qualified immunity analysis at all; rather, in just one sentence, the district court concluded, "Because genuine disputes remain as to whether Rogers' constitutional rights were violated, as explained above, Espinoza is not entitled to summary judgment. ROA.766 (citing *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021);

19

Fed. R. Civ. P. 56(a)). The disputes "explained above" in the district court's summary judgment order are:

> (1) Carranza's continued use of leg leverage on Rogers after she had been subdued and stopped struggling; (2) Carranza's failure to remove Rogers from the ant pile immediately upon learning of the ants; (3) Carranza's attempt to subdue Rogers against the ground by folding her legs and kneeling on them after Carranza knew ants were on Rogers and biting her; and (4) Carranza's failure to render aid or remove the biting ants after standing Rogers up, handing her off to another officer, and escorting her to the police department.

ROA.765-766.

Contrary to the district court's apparent conclusion that an officer is liable as a bystander merely if there are factual disputes regarding whether another officer engaged in excessive force, "Within the Fifth Circuit, '[a]n officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act.'" *Timpa*, 20 F.4th at 1038 (quoting *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020)) (alteration in original). A bystander claim is distinct from an excessive force claim. *See generally, Hale v. Towley*, 45 F.3d 914, 919 (5th Cir. 1995). Bystander liability "requires more than mere presence in the vicinity of the violation; we also consider whether an officer acquiesced in the alleged constitutional violation." *Joseph*, 981 F.3d at 328 (quoting *Whitley v. Hanna*, 726 F.3d 631, 647 (5th Cir. 2013)). In the context of an excessive force claim,

20

acquiescence may be shown by evidence that the defendant stood by, laughed, and encouraged the use of force. *See, e.g., Phillips v. Whittington*, No. 20-30731, 2022 WL 797418, at *9 (5th Cir. Mar. 14, 2022) (per curiam) (citing *Hale*, 45 F.3d at 919); *see also, e.g., Timpa*, 20 F.4th at 1039 (reversing a summary judgment in favor of officers on a bystander liability claim when the evidence showed the officers were both aware of the use of excessive force and acquiesced to it by making jesting comments). When the evidence shows only that the defendant was generally aware of the use of excessive force but did not actively acquiesce in the violation, the evidence is insufficient to establish bystander liability. *See Joseph*, 981 F.3d at 343 (citing *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018)).

Espinoza's argument before the district court regarding whether Rogers demonstrated a violation of her constitutional rights premised on bystander liability went beyond arguing that Carranza did not engage in excessive force, as was the only merits-based argument made in *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020); rather, Espinoza also argued that he did not have a reasonable opportunity to intervene and did not simply acquiesce to supposedly excessive force in the mere seconds between Rogers alerting the arresting officers to the presence of ants and her being helped to her feet. ROA.391-393, 404 at 8:27:50-8:28:21. Particularly, Espinoza explained to the district court, as corroborated by the video evidence in the record, that three seconds after Rogers

21

first alerted the City of Santa Fe's officers that ants were on her face, Espinoza asked the officers if they were planning to secure Rogers in their car. ROA.392-393, 404 at 8:28:03:. Four seconds after Espinoza inquired about securing Rogers in the police vehicle, officers attempt to lift Rogers off the ground. ROA.392-393. Rogers flails herself back to the ground three seconds later, and the arresting officers instruct Rogers, "We are trying to get you up, calm down," succeed in getting Rogers off the ground in 11 seconds after she flailed back to the ground, and another officer offers to pour water on her face to "get those ants off." ROA.392-393, 404 at 8:28:32. Espinoza returns to the scene from Rogers' car with her sandals, asks if she wanted to wear her shoes, and places the sandals on her feet about one minute after she first announced the presence of ants on her person. ROA.392-393, 404 at 8:27:50-8:28:55.

The district court did not address this indisputable video evidence at all in its order denying Espinoza qualified immunity. Moreover, Rogers' exclusive argument in her Response to Espinoza's Motion for Summary Judgment was that "Espinoza failed to intervene as he stood idly watching Carranza use pain compliance techniques on a restrained and defenseless woman for over two minutes, and did not say anything as Ms. Rogers screamed in pain from Carranza's actions and the fire ants." ROA.594-595. Rogers one-sentence argument, which she purports to be based on the video evidence in the record, is "blatantly contradicted" and "utterly

discredited" by the video footage itself. Namely, the video footage shows that Espinoza attempted to get Rogers to calm down four seconds after she claimed Carranza was hurting her and suggested that the arresting officers secure Rogers in their patrol car 13 seconds after she first alerted the officers to the presence of ants. ROA.404 at 8:27:50-8:28:03. In short, the video footage contradicts Rogers' exclusive, one-sentence argument that Espinoza failed to intervene and, instead conclusively demonstrates that Espinoza did not acquiesce to any purported excessive force, and based on this footage, the district court should have granted Espinoza summary judgment based on qualified immunity as to Rogers' bystander liability claim. *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) ("A court of appeals need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape.") (quotation omitted))

> ii. *The district court's failure to assess the clearly established law regarding Espinoza's purported failure to intervene is dispositive.*

As noted above, the district court held that Espinoza was not entitled to qualified immunity on Rogers' bystander liability claim only because of "genuine disputes" regarding Carranza's alleged use of excessive force. ROA.766. Although Espinoza moved for summary judgment on the ground that Rogers could identify no clearly established law by allegedly failing to intervene in Carranza's supposed use

23

of excessive force, the district court did not address this prong of the qualified immunity analysis at all. ROA.393-396.

Not only did the district court fail to assess the "clearly established law" component, but Rogers also made no effort to argue that, as of August 19, 2021, "any reasonable officer would have known that the Constitution required [him] to intervene." *Id.* at 345 (citing *Saucier v. Katz*, 533 U.S. 194, 199, 121 S.Ct. 2141, 150 L.Ed.2d 272 (2001)) (alteration added). To be clear, it was Rogers' burden "to 'identify a case'—usually, a 'body of relevant case law'—in which 'an officer acting under similar circumstances . . . was held to have violated the [Constitution].'" *Id.* at 330 (quoting *Wesby*, 583 U.S. at 64) (alteration and omission in original). Instead, Rogers' case citations before the district court pertaining to the "clearly established" prong are only excessive force cases aimed at Carranza's alleged actions, not bystander liability cases aimed at Espinoza's alleged inactions. ROA.595-597.[1]

The district court's omission of half of the qualified immunity analysis from its summary judgment order, coupled with Rogers' failure to carry her burden to identify an analogous case showing that Espinoza's constitutional duty to intervene was clearly established, are dispositive of Rogers' ability to overcome Espinoza's assertion of qualified immunity regarding her bystander liability claim. *See Joseph*,

---

[1] Rogers cited to the following excessive force cases in her Response to Espinoza's Motion for Summary Judgment: *Doss v. Helpenstell*, 626 F. App'x 453 (5th Cir. 2015) (per curiam) (unpublished); *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013); *Newman v. Guedre*, 703 F.3d 757 (5th Cir. 2012); and *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000).

981 F.3d at 345-46. As explained in *Joseph*, when confronted by similar omissions before a district court, the Court "cannot deny qualified immunity without identifying a case in which an officer acting under similar circumstances was held to have violated the Fourth Amendment, and without explaining why the case clearly proscribed the conduct of that individual officer." *Id.* at 345. This is so because the Supreme Court "strictly enforces the requirement to identify an analogous case and explain the analogy." *Id.* at 346. "With no briefing and no district-court analysis to review, we cannot justify a denial of qualified immunity on the grounds that clearly established law shows that every officer acted unconstitutionally in this case." *Id.*

In sum, in the absence of any assessment before the district court regarding the clearly established law applicable to Espinoza's alleged constitutional duty to intervene, this Court "cannot justify a denial of qualified immunity on the grounds that clearly established law shows that [Espinoza] acted unconstitutionally in this case." *Id.* Accordingly, the Court should reverse the district court's denial of Espinoza's summary judgment regarding Rogers' bystander liability claim based on Espinoza's entitlement to qualified immunity. *Id.*

**C.** ***The district court erred in denying Espinoza qualified immunity on Rogers' abandoned excessive force claim.***

It is well settled within the Fifth Circuit that a party abandons a claim by failing to defend it in response to motions to dismiss or other dispositive pleadings. *See McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1010 (5th Cir. 2023).

Moreover, a party "'in his opposition to a motion for summary judgment cannot abandon an issue and then . . . by drawing on the pleadings resurrect the abandoned issue.'" *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1164 (5th Cir.1983) (citing *Edward B. Marks Music Corp. v. Continental Record Co.*, 222 F.2d 488, 492 (2d Cir.1955)) (omission added). A review of the procedural history at the early stages of this case leaves no room to question that Rogers intentionally and unequivocally abandoned her excessive force claims against Espinoza, and the district court allowing the resurrection of this claim in the face of Espinoza's qualified immunity is in error.

Rogers' Original Complaint was a "shotgun pleading," which grouped allegations against all "Defendants" irrespective of there being two different, independent police departments that responded to the incident on August 19, 2021. ROA.17-38. Espinoza, in his Original Answer and Affirmative Defenses, asserted qualified immunity, noting that Rogers did not specify the personal involvement of each defendant and failed to allege that Espinoza caused any harm arising from any alleged excessive force, and requested a Rule 7 reply to address these deficiencies. ROA.116-117.

Rogers then filed her First Amended Complaint, which included a Rule 7 reply. ROA. 158-185. In the Rule 7 reply, Rogers affirmatively pleaded, "In the amended complaint above, Plaintiff explains that Espinoza was liable for the injuries

26

to Plaintiff through bystander liability and because he failed to render aid to Plaintiff." ROA.184. The remainder of Rogers' Rule 7 reply alleges that Espinoza "stood by" while Carranza engaged in alleged excessive force, and that these "inactions give rise to the 1983 claims against him." ROA.184. Rogers concluded, "Therefore, [Espinoza] is also liable under 1983 for the injuries sustained by Plaintiff as he violated her clearly-established right to remain free from excessive force in that he allowed another officer to effectuate the force on Plaintiff and because he failed to render any aid to Plaintiff afterwards." ROA.184 (alteration added).

Out of an abundance of caution, as Rogers' amended complaint remained in the "shotgun pleading" style, Espinoza sought dismissal based on qualified immunity from all of Rogers' claims in the live pleading, including excessive force and bystander liability. ROA.199-207. Rogers, in her responses to the parties' respective Rule 12(b)(6) motions, Rogers repeatedly distinguished between her excessive force claim against Carranza and her bystander liability claim against Espinoza. For example, Rogers pleaded:

- In her first amended complaint, Plaintiff does not, or at least attempted not to, allege that her conduct prior to her arrest was lawful. Instead, Plaintiff's complaint focuses on the conduct of the police after her detention and the excessive force used by Carranza and the bystander liability of Espinoza as well as Monell liability on the City of Santa Fe.

27

- In her first amended complaint, Plaintiff details the injury she sustained at the hands of the Defendant officers: i.e. being poisoned by fire ants and suffering from PTSD as well as back pains. Plaintiff alleges that the Defendant officers applied force that was excessive to the need after Plaintiff had already been detained and that they continued to use excessive force in that the defendant Carranza held Plaintiff down in an ant pile for over three minutes.

- Plaintiff was already detained, but held down in an ant pile for over three minutes by Carranza as Espinoza watched on and did nothing to stop Carranza's excessive force. Plaintiff's claims against Espinoza are for his inactions, not for his actions. Defendant Espinoza believes this Court should grant his motion because he didn't do anything. That is precisely the point. Peace officers are supposed to stop other peace officers who are doing the wrong thing. It is written in every code of conduct of every law enforcement agency in the State of Texas.

- Here, the application is simple. Officer Carranza violated Plaintiff's right to remain free from excessive force when he held her down in an ant pile for three minutes after she had already been detained. In the fifth circuit, the right to remain free from excessive force has been clearly established.

28

- Second, the use of excessive force after a person has been detained has been clearly established as constitutionally violative in the Fifth Circuit and in violation of Santa Fe Police Department policies and against Texas law. Officers do not have qualified immunity to allow other officers to use excessive force against citizens. Espinoza should have intervened, but affirmatively chose not to and allowed Carranza to hold Plaintiff down in a hog-tie-esque fashion while shoving her face and body into an ant pile.

- Defendant Espinoza claims to only be "merely present" at the scene. The truth is that Defendant Espinoza watched on as Carranza held Plaintiff to the ground in an ant pile for three minutes. It is these actions of watching and not stopping Carranza which give rise to bystander liability. Espinoza knew Carranza should not have held Plaintiff in an ant pile for three minutes. Espinoza knew that Carranza should not have held Plaintiff in that ant pile in the "hogtie-esque" fashion that Carranza did. And Espinoza did nothing to stop it. It is those inactions that give rise to the claims against him.

ROA.270-271, 275, 281-283.

Considering Rogers' unequivocal abandonment of any excessive force claim against Espinoza, the district court's characterization of the claims as pleaded in its

order regarding the parties' respective Rule 12(b)(6) motions was unsurprising. The district court wrote that Rogers brought "a claim for excessive force against Officer Carranza," and "a bystander-liability claim against Chief Espinoza for watching idly as she was manhandled, effectively hog-tied, and held down in an ant pile." ROA.766 (internal quotations omitted). The district court allowed those claims to proceed beyond the motion to dismiss phase of the lawsuit. ROA.766.

What did come as a surprise, however, was that Rogers, despite her affirmative abandonment of any excessive force claim against Espinoza at the onset of the case, attempted to resurrect this claim in her Response to Espinoza's Motion for Summary Judgment. ROA.588. There, Rogers stated that Espinoza only moved "for summary judgment as to the bystander liability claim, but does not address the excessive force claims," and, resultingly, her "excessive force claim against Espinoza for ramming her car with his and for slamming her face-first onto the ground necessarily survive." ROA.588.

In reply, Espinoza addressed the impropriety of Rogers' attempt to resurrect her previously abandoned excessive force claim in her Response to his Motion for Summary Judgment. ROA.638-640. By Rogers' own pleading admissions, as explained above, her First Amended Complaint did assert excessive force claims against Espinoza. ROA.638-640. Espinoza argued that a claim that is absent from a complaint but is raised in response to a motion for summary judgment is not properly

30

before the court. *Cutrera v. Bd. of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 926 (5th Cir. 2022) ("[T]his court has 'repeatedly emphasized' that new claims need not be considered when first raised in responses to summary judgment motions."); *Jackson v. Gautreaux*, 3 F.4th 182, 188 (5th Cir. 2021) ("It is well settled in our circuit that 'a claim which is not raised in the complaint but, rather, is raise only in response to a motion for summary judgment is not properly before the court.'") (collecting cases).

Alternatively, and out of an abundance of caution, Espinoza asserted qualified immunity from Rogers' resurrected excessive force claims because: (1) Rogers did not allege any injuries resulting from Espinoza's purported use of force (supposedly "ramming" her car with his to stop Rogers' evasion and allegedly "slamming" Rogers to the ground); and (2) Rogers failed to demonstrate anywhere in her Response to Espinoza's Motion for Summary Judgment that his supposedly excessive force violated clearly established law. ROA.640-644.

Against this procedural backdrop, the district court's order denying Espinoza qualified immunity on Rogers' excessive force claims is puzzling and wrong. The district court acknowledged that its order on Espinoza's Motion to Dismiss "did not discuss that argument specifically," referring to Espinoza's assertion of qualified immunity regarding Rogers' abandoned excessive force claim; however, the district

31

court completely ignored that Rogers admitted her First Amended Complaint only asserted a bystander liability claim against Espinoza and further ignored that Rogers unequivocally reiterated her abandonment of any excessive force claim against Espinoza in her responses to both Espinoza's and Carranza's Rule 12(b)(6) motions. Rogers' disclaimer of all claims against Espinoza in her First Amended Complaint other than her bystander liability claim superseded the excessive force claim against him in her Original Complaint. *McDonald v. McClelland*, 779 F. App'x 222, 225 (5th Cir. 2019) ("an amended complaint supersedes and replaces an original complaint, unless the amendment specifically refers to or adopts the earlier pleading.").

The Court should not allow the district court's order allowing Rogers' abandoned excessive force claim to proceed against Espinoza to stand in the face of Espinoza's assertion of qualified immunity from the onset of this lawsuit. For example, in *Joseph*, like the instant case, the district court ruled that that bystander officers were not entitled to summary judgment on the excessive force claims, "even though the court expressly analyzed excessive force as to [two other officers]." *Joseph*, 981 F.3d at 343 n.117 (alteration added). As a result, this Court disposed of the claims against the unaddressed bystander officers "using only the framework of bystander liability." *Id.* In particular, and as explained above, this Court found that although the plaintiffs may have demonstrated genuine disputes of material facts as

32

to whether the bystander officers violated the decedent's constitutional rights, "halfway is not good enough" because the Plaintiffs failed "to meet their burden to show that the [bystander officers] violated clearly established law." *Id.* at 346 (alteration added).

This result from *Joseph* is equally warranted here. Although Rogers attempted to resurrect her excessive force claim against Espinoza in her Response to his Motion for Summary Judgment, he did not make any attempt to demonstrate that Espinoza violated clearly established law when he used his car to stop Rogers from continuing her evasion and securing Rogers on the grass when she finally got out of her car. Rogers provided no evidence or authority demonstrating that no reasonable officer could have acted as Espinoza did here or that every reasonable officer faced with the same facts would not have acted as he did. *See Tucker v. City of Shreveport*, 998 F.3d 165, 174 (5th Cir. 2021) (emphasis in original) (citing *Mason v. Faul*, 929 F.3d 762, 764 (5th Cir. 2019)); *see also Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021) (citation omitted) (plaintiff bears the burden of putting forth "summary judgment evidence" demonstrating why immunity is inapplicable); *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) ("[A] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." (citation omitted)). Given the absence of any analysis from the district court, let alone the lack of arguments and authorities from Rogers in her

33

district court briefing, the denial of Espinoza's qualified immunity on Rogers' plainly abandoned excessive force claim is unjustified and should be reversed.

## PRAYER

Appellant Ruben Espinoza prays that the district court's denial of his Motion for Summary Judgment based upon qualified immunity be reversed and that all of Appellee Taylor Rose Rogers' claims against him be dismissed with prejudice.

Respectfully submitted,

SPALDING NICHOLS LAMP LANGLOIS

/s/ Charles Cory Rush
Charles Cory Rush
State Bar No. 24074989
crush@snll-law.com
Elizabeth Mylin Rice
State Bar No. 24107874
lrice@snll-law.com
SPALDING NICHOLS LAMP LANGLOIS
3700 Buffalo Speedway, Suite 500
Houston, Texas 77098
Telephone: (713) 993-7060
Facsimile: (888) 726-8374

*Attorneys for Defendant-Appellant*
*Ruben Espinoza*

34

## CERTIFICATE OF SERVICE

I certify that on September 17, 2025, the foregoing document was forwarded *via* electronic mail and through the Court's electronic filing system on September 17, 2025, to the following counsel of record:

Randall Kallinen
of Kallinen Law, P.L.L.C. Houston, TX

William S. Helfand
of Lewis, Brisbois, Bisgaard & Smith, L.L.P.

Norman Ray Giles
of Lewis, Brisbois, Bisgaard & Smith, L.L.P.


/s/ Charles Cory Rush

35

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 7,259 words.

This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman, 14-point font.

/s/ Charles Cory Rush

## CERTIFICATE OF ELECTRONIC COMPLIANCE

I certify that on September 17, 2025, this brief was transmitted to Mr. Lyle W. Cayce, Clerk of the U.S. Court of Appeals for the Fifth Circuit, through the court's CM/ECF document-filing system, https://efc.ca5.uscourts.govt. I further certify that: (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Charles Cory Rush