No. 25-40367

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

TAYLOR ROSE ROGERS,

Plaintiff – Appellee,

*versus*

RUBEN ESPINOZA; CHRISTIAN CARRANZA,

Defendants – Appellants,

---

On Appeal from the United States District Court
for the Southern District of Texas
Civil Action No. 3:24-cv-38

---

RESPONSE BRIEF OF APPELLEE TAYLOR ROSE ROGERS

---

*Submitted by*:
Randall L. Kallinen & Alexander C. Johnson
Kallinen Law PLLC
511 Broadway Street
Houston, Texas 77102
Telephone: 713.320.3785
**Attorneys for Appellee**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in 5th Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellee: | Counsel for Appellee: |
|---|---|
| Taylor Rose Rogers | Randall Kallinen & Alexander Johnson<br>Kallinen Law PLLC, Houston, Texas |

| Appellants: | Counsel for Appellants: |
|---|---|
| Ruben Espinoza | Charles Corey Rush & Elizabeth Rice<br>Spalding Nichols Lamp Langlois, Houston, Texas |
| Christian Carranza | William Helfand & Norman Giles<br>Lewis, Brisbois, Bisgaard & Smith L.L.P., Houston, Texas |

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellee**

i

## STATEMENT REGARDING ORAL ARGUMENT

As Appellee argued in her motion to dismiss, the Court does not have (and should not extend) jurisdiction over this case. Moreover, the district court provided a succinct and accurate set of reasons for denying qualified immunity. As a result, Appellee does not believe that oral argument would be necessary in determining the outcome of this case. However, she would gladly take the opportunity to participate in oral argument if the Court determines that it is necessary.

# TABLE OF CONTENTS

Certificate of Interested Persons                                   i

Statement Regarding Oral Argument                           ii

Table of Contents                                                     iii

Table of Citations                                                     v

Jurisdictional Statement                                          1

Statement of the Issues                                           1

Statement of the Case                                            2

**Standard of Review**                                          **2**

Summary of the Argument                                     3

Argument                                                            4

1. **The Court should decline to exercise jurisdiction over the appeal as a whole, but irrespective of the qualified immunity review, should also decline jurisdiction over the district court's non-substantive ruling on the excessive force claims against Espinoza.**                                    **5**

2. **The district court was correct to find that fact issues preclude summary adjudication, and a reasonable jury could easily find in Appellee's favor on the evidence.**          **9**

   2.1.    *Qualified Immunity Standard*                         *11*

   2.2.    *Carranza's Excessive Force and Espinoza's Bystander Liability 13*

   2.3.    *Espinoza's Excessive Force*                            *21*

Conclusion                                                           22

Certificate of Service                                     23

Certificate of Compliance                                 23

iv

# TABLE OF CITATIONS

**CASES**

*Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999) ..............................................3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................2

*Argueta v. Jaradi*, 86 F.4th 1084 (5th Cir. 2023) ...........................................5

*Brown v. Dickey*, 117 F.4th 1, 5–6 (1st Cir. 2024) ........................................6

*Campos v. Van Ness*, 711 F.3d 243, 247–48 (1st Cir. 2013) .......................6

*Celotex Corp. v Catrett*, 477 U.S. 317 (1986) ..............................................2

*Connors v. Graves*, 538 F.3d 373 (5th Cir. 2008) ........................................2

*Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016) ..........................................12

*Crowson v. Washington Cty. Utah*, 983 F.3d 1166, 1177 (10th Cir. 2020) .6

*Curran v. Aleshire*, 800 F.3rd 656 (5th Cir. 2015) .......................................5

*Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009) .............................19, 20

*Doss v. Helpenstell*, 626 Fed. Appx. 453 (5th Cir. 2015) ...........................19

*Gooden v. Howard County, Md.*, 954 F.2d 960 (4th Cir. 1992) ..................3

*Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000) ........19, 20

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .................................................11

*Harris v. Pittman*, 927 F.3rd 266, 275–76 (4th Cir. 2019) ..........................6

*Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020) ..............................10, 11, 17

*Lewis v. Caraballo*, 98 F.4th 521, 529–30 (4th Cir. 2024) ...........................6

*Maldonado v. Rodriguez*, 932 F.3d 388 (5th Cir. 2019) ..............................2

*McClain v. Delgado*, 132 F.4th 362 (5th Cir. 2025) ....................................5

*Newman v. Guedre*, 703 F.3d 757 (5th Cir. 2012) ....................................19

*Newman v. Guedry*, 703 F.3d 757 (5th Cir. 2012) ....................................12

*Pearson v. Callahan*, 555 U.S. 223 (2009) ....................................10

*Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021) ...........................5

*Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir. 2012) ........................13

*Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013)....................................19

*Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133 (2000)................3

*United States v. Hughes*, 606 F.3d 311, 319–20 (6th Cir. 2010) .................7

*Whitley v. Hanna*, 726 F.3d 631 (5th Cir. 2013)........................................17

*Willis v. Cleco Corp.*, 749 F.3d 314 (5th Cir. 2014) ....................................2

*Witt v. W.V. State Police*, 633 F.3d 272, 276 (4th Cir. 2011) ......................6

*York v. City of Las Cruces*, 523 F.3d 1205, 1210–11 (10th Cir. 2008) ........7

**R**ULES

Fed. R. Civ. P. 56(a) ...............................................................................2

Case: 25-40367   Document: 54   Page: 8   Date Filed: 10/24/2025

# JURISDICTIONAL STATEMENT

Appellee moved to dismiss this appeal for want of jurisdiction, and filed a reply in support of the same. That motion was carried with the case. For the reasons stated in the motion and reply, and for the reasons stated in § 1 herein, Appellee respectfully asserts that the Court does not have jurisdiction over this interlocutory appeal.

# STATEMENT OF THE ISSUES

1. Whether a reasonable jury could find Appellants liable for excessive use of force against Ms. Rogers.

2. Whether a reasonable jury could find Appellant Espinoza liable as a bystander to Appellant Carranza's excessive use of force against Ms. Rogers.

1

## STATEMENT OF THE CASE

**Standard of Review**

On appeal, grants of summary judgment are considered *de novo*.[1]

A court may only enter summary judgment when the moving party establishes that it is entitled to judgment as a matter of law because no genuine dispute exists as to any material fact.[2] The Court must draw all reasonable inferences in the light most favorable to the nonmoving party, Appellee here.[3] The burden rests on the moving party to demonstrate the lack of a genuine dispute of material fact.[4] On the other hand, the nonmoving party must identify the evidence in the record that supports its claim, and explain how the identified evidence does so.[5] There is a genuine dispute where a reasonable jury could find for the nonmoving party, and a fact is material if it could affect the outcome of the case.[6]

---

[1] *Maldonado v. Rodriguez*, 932 F.3d 388, 390 (5th Cir. 2019) (internal citation omitted).

[2] Fed. R. Civ. P. 56(a).

[3] *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

[4] *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986).

[5] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (citations omitted).

[6] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In deciding whether to grant judgment as a matter of law (much like a decision to grant summary judgment), a "court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, *at least to the extent that that evidence comes from disinterested witnesses*."[7] When liability is disputed, an officer's account will invariably be favorable to himself, and the credibility of that account is crucial.[8] Here, summary judgment clearly cannot rest on the statements of interested witnesses—chiefly Appellants' own statements. "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment."[9]

## SUMMARY OF THE ARGUMENT

In short, Appellants have failed their burden as movants; the district court correctly identified that fact issues preclude summary judgment, and neither Appellant has demonstrated that they are entitled to judgment as a matter of law based on undisputed facts. Instead, the evidence shows that a reasonable

---

[7] *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 151 (2000) (emphasis added).

[8] *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992).

[9] *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999).

3

jury could find for Appellee on all her claims, and that on the facts most favorable to her, clearly established law precludes Appellants' conduct.

## ARGUMENT

Taylor Rose Rogers had her car hit by another vehicle, was slammed face-first onto the ground, was subject to pain compliance techniques while in handcuffs, and was allowed to be bitten by fire ants hundreds of times[10] for an extended period of time, all because she drove the wrong way in an unfamiliar parking lot while trying to drop her son off for school early enough that he could have breakfast. All of this happened despite the fact that she never threatened or otherwise provoked the officers in any way that justified the force used against her.

The district court correctly found that fact issues preclude summary adjudication in this case; indeed, based on the video evidence, a reasonable jury could easily find that Carranza and Espinoza used excessive force against Ms. Rogers, and that Espinoza failed to intervene during Carranza's excessive use of force.

---

[10] *See* ROA.599–604, depicting many of the ant bites.

4

Before getting into the proverbial weeds, Appellee would note an overarching issue with Appellants' arguments. Both Appellants' arguments, but especially Carranza's argument, rely heavily on Appellee's supposed non-compliance with detention,[11] which is based on Carranza's own testimony — Ms. Rogers testifies that she did not resist while she was on the ground, and moved in response to pain from Carranza's hold and the ants, but was not trying to resist or get up.[12] That key material dispute is clearly a jury question, as it involves determining the credibility of witnesses and their testimony, making this case unsuitable for summary judgment.[13]

**1. The Court should decline to exercise jurisdiction over the appeal as a whole, but irrespective of the qualified immunity review, should also decline jurisdiction over the district court's non-substantive ruling on the excessive force claims against Espinoza.**

Appellants would have this join a line of cases that takes an explicitly "broad" reading of *Scott v. Harris* in order to reach a full *de novo* review of the summary judgment determination, including

---

[11] *See, e.g.,* Carranza's Principal Brief p. 23.

[12] *See, e.g.*, ROA.533–39 (pp. 51:11–20; 52:5–25; 53:11–23; 54:1–4, 10; 56:23–24; 57:4–5).

[13] *See* § Standard of Review, *supra*.

genuineness, whether or not video evidence "blatantly contradicts" one party's factual assertions.[14] Those cases include *McClain v. Delgado*, 132 F.4th 362 (5th Cir. 2025), *Argueta v. Jaradi*, 86 F.4th 1084 (5th Cir. 2023), *Poole v. City of Shreveport*, 13 F.4th 420 (5th Cir. 2021), and *Curran v. Aleshire*, 800 F.3rd 656 (5th Cir. 2015).

Given the near-ubiquity of body-worn and in-vehicle cameras that can often automatically begin recording, video evidence has been available in an increasingly large portion of 4th Amendment cases, and qualified immunity is surely raised in nearly all such cases. Reading *Scott* so broadly as to effectively negate the jurisdictional requirement in *Ortiz* (which, notably, came out after *Scott*) merely because video evidence is available is quickly eroding that jurisdictional bar altogether, and will continue to do so as police video enters an increasingly greater proportion of such cases.

The two main problems with expanding jurisdiction to *every* qualified immunity case with video evidence are obvious. First, it will mire the Court not only in a greater number of interlocutory appeals, but will also specifically put the Court in a position to wade through the morass of factual genuineness determinations in the new cases that it takes on as a result of this doctrine. And second,

---

[14] *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

it will further extend the life of such cases by the duration of a fact-intensive interlocutory appeal.

Importantly, this doctrine is also at odds with at least the 1st, 4th, 6th, and 10th Circuits on its reading of *Scott*.[15] Those Courts consider the jurisdictional exception created by *Scott* to be far narrower — a "very difficult [standard] to satisfy" that is met only when one party's factual assertions are "blatantly contradicted" and "utterly discredited" by the record.[16] Indeed, such a standard directly addresses the two problems created by this Court's current standard by putting the burden on the interlocutory appellant, and only taking those cases that the direct evidence itself is so clear as to resolve purported factual disputes. Beyond that, Judge Barksdale's dissent in *McClain* thoroughly examined this jurisdictional issue, and demonstrated exactly why the Court's current broad policy is at odds with the otherwise well-settled jurisdictional limitation on interlocutory qualified immunity

---

[15] *See, e.g., Brown v. Dickey*, 117 F.4th 1, 5–6 (1st Cir. 2024); *Lewis v. Caraballo*, 98 F.4th 521, 529–30 (4th Cir. 2024); *Crowson v. Washington Cty. Utah*, 983 F.3d 1166, 1177 (10th Cir. 2020); *Harris v. Pittman*, 927 F.3rd 266, 275–76 (4th Cir. 2019); *Campos v. Van Ness*, 711 F.3d 243, 247–48 (1st Cir. 2013); *Witt v. W.V. State Police*, 633 F.3d 272, 276 (4th Cir. 2011); *United States v. Hughes*, 606 F.3d 311, 319–20 (6th Cir. 2010); *York v. City of Las Cruces*, 523 F.3d 1205, 1210–11 (10th Cir. 2008).

[16] *Lewis*, 98 F.4th at 529 (internal quotations and citations omitted).

appeals, and how fact-intensive a well-considered summary judgment review is when it includes making genuineness determinations.[17]

But irrespective of this Court's exercise of jurisdiction over the other claims in the appeal, it does *not* have interlocutory jurisdiction over the excessive force claims against Espinoza, as the district court has not yet made a substantive ruling on that claim. Even if the Court were to agree with Appellants on the jurisdictional issue, their cited authority makes clear that the Court *may* exercise jurisdiction over *qualified immunity denials*,[18] but there is no cited authority for the proposition that the denial of qualified immunity with respect to *some* claims gives the Court jurisdiction over *all* of Appellants' claims.

The district court explicitly denied summary judgment on the excessive force claim against Espinoza on the procedural issue that it was raised for the first time in Espinoza's summary judgment reply.[19] It did not, however, make a substantive determination as to Espinoza's entitlement to the qualified

---

[17] *McClain*, 132 F.4th at 366–76 (Barksdale, J., dissenting).

[18] *See, e.g., Plumhoff v. Rickard*, 572 U.S. 765, 771 (2014); *see also* Carranza's Principal Brief § Jurisdictional Statement; Espinoza's Principal Brief § Jurisdictional Statement, B.

[19] ROA.767.

immunity defense.[20] Espinoza has several avenues available to him before the district court with respect to seeking a substantive ruling on that claim, including filing a motion to reconsider, a motion for judgment on the pleadings, or a motion for judgment as a matter of law. There is no "separable final decision" on that claim over which this Court could exercise interlocutory jurisdiction,[21] and the Court should give the district court the opportunity to take the first pass on a substantive ruling on that claim.

## 2. The district court was correct to find that fact issues preclude summary adjudication, and a reasonable jury could easily find in Appellee's favor on the evidence.

In the district court's own words:

> four disputed facts preclude summary judgment: (1) Carranza's continued use of leg leverage on Rogers after she had been subdued and stopped struggling; (2) Carranza's failure to remove Rogers from the ant pile immediately upon learning of the ants; (3) Carranza's attempt to subdue Rogers against the ground by folding her legs and kneeling on them after Carranza knew ants were on Rogers and biting her; and (4) Carranza's failure to render aid or remove the biting ants after standing Rogers up, handing her off to

---

[20] ROA.767.

[21] *See Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490–91 (5th Cir. 2001).

another officer, and escorting her to the police department.[22]

Each of the identified disputes bear directly on the excessive force analysis and, by extension, the bystander liability analysis. Carranza primarily argues that his uses of force were "objectively reasonable," largely because of "Rogers' aggression and acts of physical acts of resistance," which (somehow) "establish[ed] a threat because any of the officers could be injured by Rogers' kicking, thrashing, and throwing herself around."[23] But as noted *supra*, the video evidence is not dispositive, and the parties account for these events differently.[24] Where Carranza describes "leverage" being used to control Rogers because her "thrashing" created a "threat," a reasonable jury could easily see a woman writhing in pain as an officer intentionally inflicts more pain on her to "subdue" her, which, naturally, does nothing of the sort.[25] Thus, the need for force in the situation as it progressed through listed uses of force involve factual disputes that can only be resolved by the jury, making this case inappropriate for summary judgment.

---

[22] ROA.765–66.

[23] Carranza's Principal Brief pp. 26–27.

[24] *See, e.g.*, ROA.533–39 (pp. 51:11–20; 52:5–25; 53:11–23; 54:1–4, 10; 56:23–24; 57:4–5).

[25] *See, e.g.*, ROA.404 (Espinoza BWC) at 5:38–7:28.

10

### 2.1. *Qualified Immunity Standard*

"As a theoretical backdrop, the doctrine of qualified immunity attempts to balance two competing societal interests: 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"[26] The affirmative defense of qualified immunity does not apply where a public official's conduct "violate[s] clearly established . . . constitutional rights of which a reasonable person would have known."[27]

At the outset, the Appellee first must plead facts that plausibly make out a constitutional injury.[28] To defeat qualified immunity, however, "the *plaintiff's version* of those disputed facts must also constitute a violation of clearly established law."[29] In order to be clearly established, "the unlawfulness of the challenged conduct must be beyond debate[, which] leaves the rare possibility [of] an obvious case . . . [where] the unlawfulness of the challenged conduct is sufficiently clear even though existing precedent does

---

[26] *Joseph v. Bartlett*, 981 F.3d 319, 328 (5th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

[27] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[28] *Joseph*, 981 F.3d at 330.

[29] *Id.* (emphasis added).

11

not address similar circumstances."[30] Generally though, qualified immunity "requires the plaintiff to identify a case—usually, a body of relevant case law—in which an officer acting under similar circumstances" was held liable, and the cases cited need not be *directly* on point.[31]

Moreover, this Court in *Cooper v. Brown* reminds us that when it comes to qualified immunity in excessive force cases, "[t]he central concept is 'fair warning.'"[32] With respect to clear establishment specifically, it further clarifies that "'[t]he law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."[33] It goes on to conclude that "in an obvious case, the *Graham* excessive-force factors themselves can clearly establish the answer, even without a body of relevant case law."[34] Moreover, the qualified immunity defense "will not protect officers who apply excessive and

---

[30] *Id.* (quotations, citations, and alterations omitted).

[31] *Id.* (quotations, citations, and alterations omitted).

[32] 844 F.3d 517, 524 (5th Cir. 2016) (citations omitted).

[33] *Id.* (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)).

[34] *Id.* (quoting *Newman*, 703 F.3d at 764) (internal quotation marks omitted).

unreasonable force merely because their means of applying it are novel."[35]

*2.2.    Carranza's Excessive Force and Espinoza's Bystander Liability*

With respect to excessive force under the Fourth Amendment, Appellee turns to *Joseph v. Bartlett*.[36] In that case, this Court noted that the Fourth Amendment is violated "when a seized person suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force."[37] In conducting that inquiry, the Court looked at several factors:

(1) the severity of the crime;

(2) whether the suspect posed an immediate safety threat;

(3) whether the suspect was actively resisting or attempting to evade arrest;

(4) the relationship between the need for force and the amount used;

---

[35] *Newman*, 703 F.3d at 763–64.

[36] *Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020).

[37] *Id.* at 332 (citing *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012)).

(5) the timing, amount, and form of the suspect's resistance—including whether the suspect was engaged in "active" versus "passive" resistance; and

(6) whether the officer selected the appropriate degree of force by taking measured actions that correspond to the suspect's resistance.[38]

Here, the force at issue[39] involves Carranza's pain compliance techniques while Ms. Rogers was restrained on the ground, surrounded, and posing no threat or risk of escape whatsoever,[40] and Carranza keeping her in a pile of fire ants, then leaving them on her while she was unable to remove them herself. Turning to the factor analysis:

(1) The crime at issue here was not severe or inherently violent; although Carranza makes the bare assertion that the crime of evading arrest or detention in a motor vehicle is "severe," and sensationally describes her leading "a vehicular chase through an

---

[38] *Id.* at 332–33 (internal quotations, citations, and annotations omitted).

[39] As noted *supra*, Appellee asserts that irrespective of the Court's jurisdiction over the qualified immunity denials, that it does not have jurisdiction over the non-substantive denial of summary judgment as to the excessive force claims against Espinoza. Nevertheless, Appellee will briefly address those claims *ante*.

[40] *See generally* ROA.404–05 (Espinoza BWC and Moore BWC, respectively).

14

elementary school parking lot,"[41] the video shows that she was confused as to where to go, and very likely did not see Moore trying to flag her down as she drove through a parking lot, moving slowly and carefully when turning around near students, and more rapidly after reaching an empty area of the parking lot.[42] Thus, this factor should weigh in **Appellee's** favor;

(2) There is no evidence whatsoever that Ms. Rogers posed any threat to anyone — let alone an *immediate* safety threat — while she was handcuffed and face down on the ground, surrounded by approximately 6 officers;[43] Carranza's reference to the generalized "threat" of getting incidentally caught by a stray limb as Ms. Rogers writhed in pain does not even remotely establish an actual, *immediate* threat to any of the 6 armored officer's safety.[44] Thus, this factor weighs heavily in **Appellee's** favor;

(3) There is no evidence that Ms. Rogers was attempting to evade arrest while she was handcuffed and face down on the

---

[41] Carranza's Principal Brief pp. 23, 25.

[42] Moore BWC 0:00–1:05.

[43] *See generally* Espinoza BWC and Moore BWC; *see also* ROA.612–16 (Dr. Keith Howse's expert report).

[44] Carranza's Principal Brief pp. 26–27. The undersigned counsel would note that he grew up with two brothers, and currently has a toddler, and is thus no stranger to catching the occasional accidental elbow, knee, foot, or headbutt; never once has his safety been threatened by such contact, despite being the smallest of his brothers.

15

ground (in fact, she was surrounded by approximately 6 armored and armed officers),[45] and Ms. Rogers testified that she did nothing to provoke Carranza's use of pain compliance techniques, only moved in response to pain caused by Carranza's techniques and the fire ants (which she contemporaneously verbalized), and did not try to get her knees underneath her to get up.[46] Thus, because her "resistance" was instead response to pain, she did not attempt to flee, and could not flee, this factor should weigh in **Appellee's** favor;

(4) The need for force was low at worst (Ms. Rogers was already in the officers' control and handcuffed on the ground), but the amount used was high, considering the combined effect of Carranza's pain compliance and continued biting by fire ants;[47] although Carranza implies that his use of force was acceptable because he "did not strike, punch, hit, kick, or use any weapon against Rogers," he ignores entirely that Appellee's assertions, as supported by her deposition and the video evidence, was that he was intentionally causing a large amount of pain.[48] That he could

---

[45] *See* Espinoza BWC; Moore BWC; ROA.605–25.

[46] ROA.418–50; *or* ROA.533–39 (pp. 51:11–20; 52:5–25; 53:11–23; 54:1–4, 10; 56:23–24; 57:4–5).

[47] *See, e.g.*, Espinoza BWC at 5:38–7:28, *see generally* ROA.605–25.

[48] *See* Carranza's Principal Brief p. 28.

16

have used more violent means is inapposite to the analysis. Thus, this factor clearly weighs in **Appellee's** favor;

(5) At worst, Ms. Rogers engaged in a low amount of resistance (which she does not concede) due to the pain she was experiencing — as a result, this factor should weigh in **Appellee's** favor at this stage, or at least should be determined by a jury; and

(6) Carranza did not take measured actions that corresponded with Ms. Rogers', starting by keeping her arm wrenched upward while pressing her into the ground, unnecessarily causing pain, while she was on the ground, face down, handcuffed, and not moving, and ultimately resorting to the use of *greater* pain compliance techniques as she was being bitten by fire ants and verbalizing her pain, fear, and confusion[49] — thus, this factor also clearly weighs in **Appellee's** favor.

These factors also do not adequately capture the fact that Ms. Rogers was kept in a pile of fire ants for at least 31 seconds,[50] that seh was unable to remove the ants until *after* she was taken to jail,[51] and that Carranza knew she was being bitten, but did not do anything to help her as ants bit her hundreds of times.[52]

---

[49] *See, e.g.*, Espinoza BWC at 5:38–7:28, *see generally* ROA.605–25.

[50] Espinoza's Principal Brief p. 10 (admitting as much)

[51] ROA.418–50; *or* ROA.546–74 (pp. 64:20–65:22).

[52] ROA.599–604.

17

With respect to bystander liability, Appellee must show: (1) that Espinoza knew Carranza was violating Ms. Rogers' constitutional rights (here, his 4th Amendment right to be free from the use of excessive force), (2) that he had "a reasonable opportunity to prevent the harm," and (3) that he chose "not to act" anyway.[53] This Court also considers whether an officer acquiesced in the alleged constitutional violation.[54] Based on the evidence, Espinoza failed to intervene as he stood idly watching Carranza use pain compliance techniques on a restrained and defenseless woman for over 2 minutes, and did not say anything to help as Ms. Rogers screamed in pain from Carranza's actions and the fire ants.[55] Espinoza argues that telling her to "remain calm" as Carranza used pain compliance techniques on her and asks about which car she would be secured in somehow "blatantly contradicts" and "utterly discredits" Appellee's argument,[56] despite the fact that neither of those statements actualy amount to an attempt to stop the unconstitutionally excessive use of force occurring right in front of

---

[53] *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013).

[54] *Joseph*, 981 F.3d at 343 (citing *Whitley*, 726 F.3d at 647) (internal quotations, alterations, and other citations omitted).

[55] *See, e.g.*, Espinoza BWC at 5:38–7:28; ROA.490–91 (pp. 37:1–38:1); *see generally* ROA.605–25.

[56] Espinoza's Principal Brief pp. 9–10, 22–23.

18

him. As a result, a reasonable jury could easily find Espinoza liable as a bystander.

With respect to qualified immunity, the *Graham* factors themselves and the *Joseph* case both clearly establish her right to be free from the force used on her. The Fifth Circuit has also squarely held that "the state of the law in August 2016 clearly established that an officer engages in an objectively unreasonable application of force by continuing to kneel on the back of an individual who has been subdued."[57] To further crystallize just how clearly established Ms. Rogers' rights were here, she also points to the following cases in reverse chronological order: *Doss v. Helpenstell*, 626 Fed. App'x. 453 (5th Cir. 2015) (per curiam) (unpublished), *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), *Newman v. Guedre*, 703 F.3d 757 (5th Cir. 2012), *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009), *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir. 2000).

In *Doss*, this Court determined that the plaintiff was non-threatening, posed little risk of escape, and any resistance was passive at most, so the officer's decision to quickly escalate the situation by striking him in the head with his pistol rather than

---

[57] *Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021).

19

continue negotiating was not entitled to qualified immunity.[58] In *Ramirez*, the officers applied excessive force by using a taser in response to the plaintiff failing to put his hands behind his back, and pulling his arm away, and that tasing him after he had been handcuffed and on the ground was even more excessive.[59] In *Newman*, the plaintiff did "struggle" by backing into the officers, but it was not considered "active resistance"; and the officers "immediately resorted to [force] without attempting to use physical skill, negotiation, or even commands."[60] The officers there were held liable for excessive force. In *Deville*, a plaintiff was held at traffic stop for a minor violation without probable cause, displayed passive resistance in the face of an officer's threat, and gave no indication of an intent to flee, so the officer's decision to breaking her window with a flashlight, roughly extracting her from her car, causing a forceful blow to her abdomen, and applying the handcuffs too tightly was not entitled to qualified immunity.[61] And in *Goodson*, the officers were not entitled to qualified immunity where they tackled the plaintiff, audibly broke his shoulder, and then jerked his arm back to handcuff him despite being told that

---

[58] *Doss*, 626 Fed. App'x. at 460.

[59] *Ramirez*, 716 F.3d at 378–79.

[60] *Newman*, 703 F.3d at 763.

[61] *Deville*, 567 F.3d at 169.

his shoulder was broken when they did so to a plaintiff who did not have time to comply with their order to put his hands on their car, and then pulled his arm away in surprise at being grabbed and stumbled backwards due to being off-balance.[62]

### 2.3.    *Espinoza's Excessive Force*

Espinoza argues that the district court should have dismissed the excessive force claim against him because Appellee purportedly "abandoned" the claim at the motion to dismiss stage.[63] He points to language in her motion to dismiss response and first amended complaint, where she had misidentified Carranza as having removed her from the vehicle.[64] Discovery revealed that Espinoza was the one to have thrown her to the ground after ramming her vehicle, and those claims were never dismissed, even if she had not directly attributed them to Espinoza. As a result, these claims were never abandoned, and as argued above, Espinoza can pursue the dismissal of those claims before the district court.

---

[62] *Goodson*, 202 F.3d at 733–34, 740.

[63] Espinoza's Principal Brief § C.

[64] ROA.175 (¶ 27).

## CONCLUSION

For the foregoing reasons, Appellee respectfully requests that this Court **AFFIRM** the district court's denial of summary judgment, and **REMAND** for further proceedings.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
Kallinen Law PLLC
State Bar of Texas
   Bar No. 24123583
alex@acj.legal
511 Broadway Street
Houston, Texas 77012
Telephone: 573.340.3316
**Attorney for Appellee**

*/s/ Randall L. Kallinen*
Randall L. Kallinen
Kallinen Law PLLC
State Bar of Texas
   Bar No. 00790995
attorneykallinen@aol.com
511 Broadway Street
Houston, Texas 77012
Telephone: 713.320.3785
Fax: 713.893.6737
**Attorney for Appellee**

22

CERTIFICATE OF SERVICE

I certify that on October 24th, 2025, the foregoing Brief was filed electronically using the Court's CM/ECF system, which will give notice to all counsel of record through the Court's ECF System.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellee**

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,251 words in total. This brief complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word version 16, and is set in Century Old Style Std, size 14.

*/s/ Alexander C. Johnson*
Alexander C. Johnson
**Attorney for Appellee**